GEORGE S. STEERE AND NORRIS J. BROWN v. JACOB VAN-DERBERG.

*Attachment— Non-resident defendant— Publication— Declaration— Jurisdiction.*

A declaration in an attachment suit, in which the defendant is published in for want of personal service, cannot be filed *prior* to the filing of an affidavit of such publication; and a failure to comply with this *statutory* provision will render the judgment entered in such suit void.

Error to Montcalm. (Smith, J.) Argued October 26, 1887. Decided November 10, 1887.

Replevin. Plaintiffs bring error. Reversed, and a new trial on the assessment of damages ordered. The facts are stated in the opinion.

*William O. Webster* (*S. G. Millard,* of counsel), for appellants.

*Mitchel & McGarry,* for defendant.

CHAMPLIN, J. In this case the writ of replevin issued by the plaintiffs was quashed, and the cause came on to be heard in the court below for the purpose of assessing the value of the property taken upon the writ. Testimony was

taken therein, and upon request of plaintiffs the circuit court filed special findings of fact and law as follows:

"1. In September, 1884, one George C. W. Richards was engaged in the drug business at Sheridan, Michigan, and had in his possession, and owned the same, a stock of drugs and medicines.

"2. September 5, 1884, Hazeltine, Perkins & Co., in the names of the different members of the firm, commenced suit against said Richards by attachment, alleging in the affidavit that Richards had absconded from the State with intent to defraud his creditors, and that he had assigned his property with the like intent, and a writ of attachment was duly issued on the same day, returnable September 12, 1884.

"The writ was returned not served on the return-day, but showing a seizure of the property in question in this suit,— the drugs and medicines.

"Notice of attachment was duly and regularly published for six successive weeks, and on the twenty-ninth day of November affidavit of publication was filed.

"The declaration was filed in the case November 21, 1884.

"On the same day that affidavit of publication was filed, being November 29, 1884, the defendant's default was entered, and the same made absolute December 2, 1884.

"On the third of December, 1884, judgment was rendered against defendant, Richards, for $544.18.

"December 5, 1884, costs taxed at $39.50, and execution was issued December 5, 1884, returnable December 20, on which the following return appears:

"'By virtue of the annexed execution, to me directed, I levied on the goods and chattels of the defendant therein named as described to me in the notice annexed to said writ, and, after advertising the same for sale as required by law, I did, at the time and place appointed in the notice of sale, expose said goods and chattels for sale at public auction or vendue, and at said sale several persons were in attendance, and several different persons bid therefor; that the same was sold and duly struck off to M. J. Summers for the sum of thirteen hundred and fifty dollars.

"'I further certify and return that I have paid the attorney for the within named plaintiffs the full amount of the damages and costs herein, and taken his receipt therefor.

"'J. A. SUMMERS, Under-Sheriff.'

"'Dated December 20, 1884.

"3. On the eighteenth of September, 1884, suit was commenced against said Richards by attachment for the sum of

$——, in favor of Hinchman *et al.*, as plaintiffs, and the writ issued, and made returnable October 7, 1884, on which day it was returned showing that the defendant's property was attached, but no personal service had because the defendant could not be found. The affidavit, notice of attachment, proof of publication, filing of declaration, entry of default, default absolute, rendition of judgment, issuance and return of execution, were substantially the same as in the case of *Hazeltine, Perkins & Co. against Richards.*

"4. On the twelfth of September, 1884, another suit was commenced by attachment in favor of Barnes *et al.,* and against said Richards, in which like proceedings in the case last above mentioned were had and taken.

"5. On the thirteenth of September another suit was commenced by attachment in favor of Courtlander *et al.* against said Richards for the sum of over one hundred dollars, in which the subsequent proceedings were the same as in the case of *Hinchman et al. v. George C. W. Richards.*

"6. Each suit was commenced by affidavit against Richards as an absconding debtor, and were substantially the same.

"7. The executions issued in the several attachment suits having been levied on the said stock of goods, and the judgments therein amounting to $1,350, the property, after being duly advertised, was offered for sale by said under-sheriff, and bids made thereon. The sale was held open until after noon, and during this time an agreement was entered into between Mr. Griswold, representing the attachment creditors, the agent of Hinchman & Sons, one of said creditors, whose execution was the last one levied, and Mr. M. J. Summers, that Summers should bid on the goods $1,350, and if no person bid more they should be struck off to him; that Hinchman & Sons would pay the amount due the prior attaching creditors in cash, and give Summers time to pay for the goods, taking his notes indorsed by his father, and also secured by chattel mortgage on the goods, for the full amount of $1,350.

"When the sale was again opened in the afternoon, Mr. Griswold, at the request of Summers, made the bid of $1,350, and, there being no higher bid made, the goods were struck off on that bid. Subsequently the notes and mortgage were executed by Summers to Hinchman & Sons for the price bid, $1,350, and Mr. Griswold took them to Detroit to close the matter up with Hinchman & Sons, but owing to some misunderstanding they declined to accept the same and pay the other attaching creditors.

" When notified of this fact, Summers not being in a situation to pay the money, and by an agreement between Griswold, acting for the attaching creditors, Mr. M. J. Summers, and the defendant in the case, the goods were delivered to the defendant, the notes and mortgage delivered up to Summers, and the defendant paid in cash to Griswold $900 for the same, and Mr. Griswold, as attorney for the plaintiffs in the attachment suits, receipted the judgments and executions to the sum and amount of $1,350, the amount at which they were struck off to Summers.

" 8. Immediately after Jacob Vanderberg purchased the stock of goods, he put an agent in charge, and commenced selling the same at retail. He also purchased some goods which he added to the stock. The amounts so sold and purchased were about equal. In this manner he was carrying on the business when the writ of replevin in the present case was served, and the property in question seized upon the writ and delivered to the plaintiffs.

" 9. On the thirtieth day of January, 1885, the plaintiffs instituted this suit. Mr. Vanderberg was made sole defendant. The stock of goods, as above stated, was seized and delivered to the plaintiffs, who subsequently sold and disposed of it. No personal service was ever had, though several, alias writs were issued. Upon motion of defendant's attorneys the writ was dismissed, and the suit ordered to stand on the assessment of value. Upon this issue testimony was taken on the part of the defendant.

" 10. The plaintiffs, who are attorneys at law, claim title to the property in question by virtue of the following instrument, which they claim had been executed by George C. W. Richards, and in their possession before suit was brought, viz.:

##### " ' POWER OF ATTORNEY.

" ' Know all men by these presents that I, George C. W. Richards, of the village of Sheridan, Montcalm county, Michigan, have made, constituted, and appointed, and by these presents do make, constitute, and appoint, Steere & Brown my true and lawful attorneys, for me, in my name, place, and stead, to collect my exemption rights, and receive the money for the same, from certain parties who have seized my business and household goods by virtue of certain writs, the nature of which I do not accurately know, *and also selling and conveying unto them all of my goods in said county;* giving and granting to my attorneys full power to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as I

might or could do if personally present; with full power of substitution and revocation, hereby ratifying and confirming all that my said attorneys or their substitutes shall lawfully do or cause to be done by virtue hereof.

"' In witness whereof I have hereunto set my hand and seal the ———— day of ———, 1885.

"' GEORGE C. W. RICHARDS.  [Seal.]'

" 11. The plaintiffs are a law firm doing business at Stanton, and one of the firm, Mr. Brown, was present at Sheridan at the sale when the property in question was sold on the execution by the sheriff. After said sale, and prior to the replevin suit, the instrument under which the plaintiffs claim title was drawn in the office of said plaintiffs by one of their clerks, and at their request sent to said George C. W. Richards, in the state of California, who executed the same, and sent it by mail to the plaintiffs. The plaintiffs paid no consideration for the property in question.

" The said George C. W. Richards is a non-resident of this State, and has has been ever since and prior to the issuing of said writs of attachment.

" Such goods were worth at the time of seizure, January 30, 1885, $900, and defendant is entitled to judgment for that amount and interest thereon at seven per cent. to date, which is $1,024.95.

" Said defendant having waived a return of the property, let judgment be entered for defendant in that amount.

" 1. That the judgments rendered in the several attachment cases against George C. W. Richards are voidable only, and not void, and that a sale upon an execution issued thereon, while unreversed, would confer a valid title upon the purchaser at such sale. The judgments are not open to attack collaterally.

" 2. That the sale on such execution divested said George C. W. Richards of his title to the goods in question, and conferred said title to the purchaser at said sale.

" 3. That the plaintiffs, having no right nor title to the goods in question, cannot contest the validity of Vanderberg's title thereto."

There are only two questions presented by this record:

1. Was Richards divested of his title to the goods in question by the attachment proceedings?

2. If not, did the instrument under which the plaintiffs claim transfer the title to them?

The proceedings in the attachment suit are conceded to be defective, but counsel for the defendant claim that the defects went merely to the regularity of the proceedings, and were not such as to render the judgment a nullity.

The defects appear in the second finding of facts. The writ was issued September 5, 1884, returnable September 12, 1884. It was returned on that day, from which it appeared that property had been attached, and that defendant could not be found. On the twenty-first day of November, 1884, the plaintiffs filed their declaration. This was premature, as affidavit of publication was not filed until the twenty-ninth day of November. Notice of attachment was duly and regularly published for six weeks. On the same day the affidavit was filed the defendant's default was entered. On December 2 the default was made absolute, and on December 3 judgment was rendered against Richards for $544.18.

Neither the statutes nor rules of court were regarded by the plaintiffs in the attachment suit. How. Stat. § 8005, enacts that—

" If a copy of the attachment shall not have been served upon any of the defendants, and none of them shall appear in the suit, the plaintiff, on filing an affidavit of publication of the notice hereinbefore required for six successive weeks, may file his declaration in the suit, and proceed therein as if a copy of such attachment had been served upon the defendants."

The jurisdiction conferred upon circuit courts in proceedings by attachment is special, and a strict compliance with statutory requirements is essential to the validity of judgments rendered where there has been no personal service of the writ. That irregularities in the proceedings may be corrected upon writ of error no one disputes.

It is a settled rule of law that all exceptional methods of obtaining jurisdiction over persons not found within the State must be confined to the cases and exercised in the way

precisely indicated by the statute, and it may also be regarded as settled law that a failure to comply with the statutory requirements where the jurisdiction conferred is special, and no personal service is obtained, renders the judgments null and void. *Thompson v. Thomas,* 11 Mich. 274; *King v. Harrington,* 14 Id. 532; *Millar v. Babcock,* 29 Id. 526; *Johnson v. Delbridge,* 35 Id. 436; *Woolkins v. Haid,* 49 Id. 299; *Rolfe v. Dudley,* 58 Id. 208.

In *Woolkins v. Haid, supra,* it was said that—

"In suits by attachment, where no actual service has been obtained nor any real appearance made, a scrupulous adherence to the settled course of practice has always been required, and the plaintiff has uniformly been held to a strict compliance with all conditions precedent to a judgment by default. * * * The default here entered was wholly unauthorized, and has no force. The proceedings derive no support from it. But as there was no actual service, and no appearance in fact, a valid default was a needful preliminary to a final judgment. It could not be dispensed with."

The defect in that case was the same as in this. The declaration was filed four days before the affidavit was filed. It is unnecessary to pursue the subject further. The judgment rendered was a nullity, and not a mere irregularity. *Granger v. Judge of Superior Court,* 44 Mich. 384, 386. In this case the distinction between cases where there has been a personal service and where there has not is clearly pointed out. In the former case, the irregularity must be taken advantage of upon writ of error. In the latter proceedings not conforming to the statutes are void. It follows also that such proceedings can be attacked collaterally, as was done in *Millar v. Babcock,* 29 Mich. 526, and in *King v. Harrington,* 14 Id. 532.

The title of defendant having failed for want of a valid judgment to support it, the court below was in error in awarding to him the value of the property upon the assessment of damages.

The judgment is reversed, and a new trial on the assessment of damages ordered.

SHERWOOD and MORSE, JJ., concurred.

CAMPBELL, C. J., did not sit.