## JAMES NUGENT v. DANIEL NUGENT AND EMANUEL NUGENT.

*Fraudulent conveyances — Attachment — Non-resident defendant — Filing declaration.*

1. Only a *judgment* creditor can maintain a bill to set aside the debtor's deed because fraudulent as to creditors.

2. Proceedings in an attachment suit against a *non-resident* defendant who does not appear may be attacked collaterally. *Granger v. Judge of Superior Court*, 44 Mich. 384; *King v. Harrington*, 14 Id. 532; *Millar v. Babcock*, 29 Id. 526.

3. Filing a declaration in an attachment suit *prior* to filing proof of publication, where the defendant is a non-resident and does not appear, renders the judgment taken in such suit void. *Steere v. Vanderberg*, 67 Mich. 539.

Appeal from Kent. (Montgomery, J.) Argued April 6, 1888. Decided April 27, 1888.

Bill in aid of execution. Defendant Emanuel Nugent appeals. Decree reversed and bill dismissed. The facts are stated in the opinion, as far as material to the decision of the case.

*J. C. Quinsey* (*James Nugent,* of counsel), for complainant.

*Taggart, Wolcott & Ganson,* for appellant.

[The points involved in the case, as decided, are so fully discussed, and the authorities cited so conclusive, that a summary of the briefs of counsel is omitted.—REPORTER.]

LONG, J. The facts in this case are very well stated by counsel for defendant, and are as follows:

"The bill of complaint in this case is filed by James Nugent as judgment creditor of Daniel Nugent, one of the defendants, to set aside a deed of lands made by Daniel to Emanuel, upon the alleged ground that said conveyance is fraudulent and void as to the creditors of the said Daniel.

"As we understand it, the case turns upon questions of law, and nearly all of the more material facts are either conceded or established by clear admissions of the party against whom they weigh.

"Outlined briefly, they are as follows:

"In the spring of 1879 the defendant Daniel Nugent was a single man, 34 years old, living with his aged and widowed mother, and a brother and sister (both invalids and unmarried), upon the old family homestead, an 80-acre farm in the township of Cannon, Kent county. Since sometime in April, 1877, Daniel had held the legal title to this farm, subject—

"1. To a lease of the same to Mary Nugent, his mother, for the term of her life.

"2. To a lease of the south half of the same to his brother John, which was to take effect at the death of his mother, and continue for the life of the said John Nugent.

"3. To a mortgage of $1,000, given in 1877 for the benefit of his sister, Cecilia, upon which there was about two years of interest accrued

"He also owned 120 acres adjoining the homestead, which was incumbered with mortgage to James Nugent, the complainant, for $3,200 and accrued interest.

"Daniel had been working the farm, and taking care of the family, under some arrangement with his mother, who held the life-lease.

"The defendant Emanuel Nugent is an elder brother, who was living upon his own farm in the adjoining township of Grattan, about four miles from the old homestead.

"Daniel had become dissatisfied with his surroundings, and April 30, 1879, he left, stating that he was going to Colorado and the mining country of the west.

"Before his departure he deeded all his lands to Emanuel, and also gave him a bill of sale of his farming tools, stock, and other personal property, amounting to $1,000 or $1,200 in value.  Emanuel expressly assumed the mortgage for $3,200, and took the 80-acre farm subject to the $1,000 mortgage and the two life-leases, and he also assumed certain debts of Daniel, amounting to about $300, and including, so far as appears, all of Daniel's unsecured debts, except about $800 or $1,000 of notes in the hands of his mother and brothers.

"After his departure, Daniel wrote quite often to different members of the family, up to August or September 1, 1879, at which date two letters, written at Leadville, Col., were received.  Nothing has been heard from or of him since then, except vague rumors, though a good deal of effort has been made, by advertising in the newspapers and other means, to obtain information as to his fate.

"When Daniel went away, about April 30, 1879, complainant was a law student at Ann Arbor.  About June 1 he came to the homestead in Grattan, and stayed some weeks, leaving July 6 or 7, 1879, after a somewhat stormy talk with Emanuel, in which he was charged by Emanuel with stirring up trouble, which he denied, and retorted with charges of like nature against Emanuel.

"In the spring of 1880 the complainant, with full knowledge of the whole matter, settled with defendant Emanuel, and received a deed of the 120 acres covered by his mortgage from Daniel, in full satisfaction of that mortgage and notes, then amounting to $3,400, or upward.  He has since sold and conveyed the greater portion of these lands to third parties, who have conveyed to still others.

"In September, 1880, the said Mary Nugent, the mother of the parties to this suit, together with her two sons, Joseph F. and John, and her daughter, Cecilia, filed their bill of complaint by the said James Nugent, their solicitor, in the circuit court for the county of Kent, in chancery, against said Emanuel Nugent as defendant; alleging, among other things, that the conveyance of said property, real and personal, from Daniel, was made and received in trust for the payment of the debts and obligations of said Daniel, and

more especially the debts owing to the complainants in said suit.

"This bill was held bad on demurrer, and was dismissed by the complainants on their own motion, rather than to amend.

"In August, 1882, complainant, James Nugent, acting in the name and on behalf of Mary Nugent, his mother, began an attachment suit against Daniel Nugent by filing his affidavit in the circuit court for the county of Kent, which finally resulted in the judgment and levy which are set out in the bill of complaint in this case.

"The original bill was filed by Mary Nugent as complainant, but James Nugent, who is the complainant in the final bill of revivor and supplement, came into the case under an assignment of said judgment, and the notes on which it is based.

"After hearing on pleadings and proofs, the circuit court made a decree substantially as prayed in the bill, except that it reduced the amount of complainant's lien to $1,161.74. From this decree defendant Emanuel Nugent appealed to this Court."

There are several distinct grounds of objection to the decree of the circuit court.

The judgment which this bill is filed to enforce was recovered in a suit begun in August, 1882, by attachment against a non-resident defendant, who was not served with process, and who never appeared in any manner in the cause.

It is claimed that the proceedings in this attachment suit did not comply with the requirements of the law. The affidavit for attachment was made and filed August 4, 1882, and the writ issued the same day, returnable September 5, 1882. The statutory notice of attachment was published for six weeks, beginning September 28, 1882, and proof of publication was filed December 28, 1882. The declaration was filed September 2, 1882, which was prior to the return-day of the writ, and three months and twenty-six days before the filing of the affidavit of publication of notice of attachment.

The declaration was prematurely filed. Section 8005, How. Stat., provides:

"If a copy of the attachment shall not have been served upon any of the defendants, and none of them shall appear in the suit, the plaintiff, on filing an affidavit of the publication of the notice hereinbefore required, for six successive weeks, may file his declaration in the suit, and proceed therein as if a copy of such attachment had been served upon the defendants."

In suits by attachment, where no personal service of the writ has been obtained, and the defendant has in no manner appeared in the cause, a strict compliance with statutory requirements is essential to the validity of the judgment.

In *Woolkins v. Haid*, 49 Mich. 299 (13 N. W. Rep. 598), the declaration was filed four days prior to filing the affidavit of publication of notice of attachment, and this Court held the judgment void.

In *Steere v. Vanderberg*, 67 Mich. 530 (35 N. W. Rep. 110), the writ of attachment was issued September 5, 1884, returnable September 12, 1884. Declaration was filed November 21, 1884, and affidavit of publication of notice of attachment was filed November 29, 1884, the affidavit being filed eight days after filing the declaration, and this Court held the declaration prematurely filed, and the judgment void. In the above case Mr. Justice CHAMPLIN said:

"It is a settled rule of law that all exceptional methods of obtaining jurisdiction over persons not found within the State must be confined to the cases and exercised in the way precisely indicated by the statute; and it may also be regarded as settled law that a failure to comply with the statutory requirements, where the jurisdiction conferred is special, and no personal service is obtained, renders the judgment null and void;" citing *Thompson v. Thomas*, 11 Mich. 274; *King v. Harrington* 14 Id. 532; *Millar v. Babcock*, 29 Id. 526; *Johnson v. Delbridge*, 35 Id. 436; *Rolfe v. Dudley*, 58 Id. 208 (24 N. W. Rep. 657).

The proceedings may be attacked collaterally. *Millar v. Babcock*, 29 Mich. 526; *King v. Harrington*, 14 Id. 532.

This case must be ruled by the foregoing cases. The judgment upon which this proceeding is founded must be held void and of no effect.

As only a judgment creditor could maintain this bill, it follows that the case must fail, and we need not discuss the other questions raised.

The decree of the court below must be reversed, and a decree entered in this Court dismissing complainant's bill, with costs of both courts to defendants.

CHAMPLIN and MORSE, JJ., concurred. SHERWOOD, C. J., did not sit