## No. 12,361.

AMERICAN FREEHOLD LAND MORTGAGE COMPANY OF LONDON, LIMITED, VS. J. CALDWELL PEIRCE; INTERVENTION OF PHILIP B. PEIRCE ET ALS. AND PHILIP B. PEIRCE ET ALS. VS. J. CALDWELL PEIRCE ET ALS. (CONSOLIDATED).

A foreign corporation lending money to a resident of this State, through brokers domiciled out of the State, does not come within the meaning of Art. 236 of the Constitution of the State. Mortgage Co. vs. Ogden, *ante*, p. 8.

If the seized debtor obtains credit for the amount of his debt he can not object to any arrangement made by the plaintiff with the purchaser. All the debtor could require would be that the debt should be declared discharged. Bandin vs. Roliff, 1 N. S. 166; 8 N. S. 100.

A sale of minor's property, through executory process, taken contradictorily with their father as their tutor, is valid, though no certificate of the amount of the inventory of the property of the minors has been recorded as required by law, when the father having been appointed as their natural tutor by the court, he has taken an oath as such, and letters of tutorship have issued to him. The father has the right under such circumstances to stand in judgment defensively for the minors as a tutor *ad hoc*, under Art. 313 of the Civil Code, even though he be not authorized to administer generally as tutor.

APPEAL from the Eighth Judicial District Court for the Parish of Concordia. *Tullis, J.*, Twenty-third District, sitting in place of the judge of the Eighth Judicial District, recused.

---

*H. R. Boyd* for Plaintiff, Appellant.

*Thomas P. Clinton* for Curator of Shattuck & Hoffman, Defendant and Appellee.

*Boatner & Hough* for Heirs of Mrs. Peirce, Intervenors, Appellees.

Argued and submitted January 19, 1897.
Opinion handed down February 1, 1897.

### STATEMENT OF THE CASE.

On the 26th of February, 1885, Mrs. Charlotte H. Peirce, wife of J. Caldwell Peirce, granted a mortgage on the Delhi plantation, in the parish of Concordia, to Gilbert M. Richardson, of New York, to secure a loan of four thousand dollars. The plantation was her separate property. The act contained a clause waiving the benefit of appraisement in case of forced sale. On the 3d of April, 1885, Mrs. Peirce died, leaving four minor children.

On April 23, 1885, J. Caldwell Peirce, the father of the children, applied to be confirmed as natural tutor of the minors. He asked that an inventory be taken, and annexed an oath that the district judge was absent from the parish. On the same day the clerk of the District Court ordered that the applicant be appointed and confirmed as natural tutor upon taking oath and otherwise complying with all legal requisites. The same day an inventory was taken, and the oath of the father was filed. No certificate of the amount of the inventory seems to have been recorded, or to have been issued by the clerk. *On the 25th of April, 1885, James C. Brandon, the maternal uncle of the minors, was appointed as under-tutor of the minors, and qualified as such on the 25th of May, 1885.

On the 23d of April, 1885, the district clerk issued to the father letters of appointment and qualification as tutor (12 An. 611), the letters reading: "Whereas J. Caldwell Peirce has taken the oath and otherwise complied with the law, he is, therefore, appointed natural tutor and *ex-officio* administrator to the minors (naming them). Witness the Hon. S. Charles Young, judge of said court and the seal of said court."

Default having been made on the payment of one of the notes secured by the mortgage to Richardson, executory proceedings were

instituted on the 2d of March, 1887, for the amount due, three thou-
sand and two hundred dollars, and interest, less a credit of one hun-
dred and fifty-nine dollars, before the District Court for Concordia.
parish. J. Caldwell Peirce, as natural tutor and *ex-officio* adminis-
trator, accepted service of notice of demand and order of seizure and
sale. The Delhi plantation was seized and advertised and, on the 7th
of May, 1887, sold by the sheriff. At the offering it was adjudicated
to F. B. Hoffman, of the firm of Shattuck & Hoffman, of New
Orleans, for the price of four thousand four hundred and one dollars.
The purchase was made by Hoffman through H. R. Steele, acting as
his agent and attorney in fact, and, by direction of the attorneys of
the seizing creditor the price of the adjudication was credited upon
the writ and the writ returned.

On the 14th of June, 1887, Hoffman, through Steele as his agent,
sold the property to J. Caldwell Peirce for the sum of three thousand
five hundred and ninety-three dollars. On the 17th of January, 1889,
J. Caldwell Peirce mortgaged the property to the plaintiff company
to secure a loan of four thousand six hundred and forty dollars.

On the 11th of November, 1890, he executed a second mortgage
on the same property to secure an additional loan of one thousand
dollars. Peirce having defaulted in the payment of the interest and
principal falling due on both of the loans, the plaintiff on the 2d of
April, 1895, presented a petition to which he annexed the notes and
mortgage for the second loan and prayed for and obtained an order
for the seizure and sale of the property subject to the first mortgage.

Before seizure was made Peirce obtained an injunction against
the execution of the order. The ground assigned for injunction
was that plaintiff was a foreign corporation and had violated all of
the provisions of Art. 236 of the Constitution of Louisiana relative
to foreign corporations doing business in Louisiana, and further that
the plaintiff was proceeding against him and asking judgment on a
demand made up partly of illegal and usurious interest—that five of
the notes in the act of mortgage were largely made up of capital-
ized interest at the rate of 10 per cent., which amount, together
with the 10 per cent. attorney's fees thereon, exceeded the sum of
three hundred dollars.

That plaintiff had elected by his petition to claim the maturity of
the whole debt by reason of the default of payment on the 4th of
May, 1894, and that they could not proceed to collect said capital—

ized interest not earned at or subsequent to said date; that said portion of said debt if it existed was extinguished thereby; that the injunction should be perpetuated, but should the same be dissolved the amount of the debt should be reduced by said amount as illegal, inequitable and usurious.

On May 28, 1895, the children of Mrs. Peirce filed an intervention in the suit setting up that they were the sole heirs of Charlotte H. Peirce; that after her death their father made application to be appointed and confirmed as their natural tutor, but that he did not comply with the law; that no true and faithful inventory was made; that no certificate of the amount of the inventory of the minors' property was recorded in the mortgage record book; that their father went into possession of the property, and subsequently, in the year 1886, entered into a correspondence with Shattuck & Hoffman, who held a mortgage on Delhi plantation for about four thousand dollars, executed by their mother, by which arrangement the said mortgage should be foreclosed, and the title to the property should be made to vest in the father, J. C. Peirce. That in pursuance of said arrangement, Shattuck & Hoffman foreclosed their mortgage, proceeding in the foreclosure contradictorily only with their father as their tutor. That Hoffman, one of the firm of Shattuck & Hoffman, bought at the sale, bidding the amount of the debt due them. That he subsequently sold the plantation to their father for just the amount of the debt and that that sale was illegal. That the present plaintiff had knowledge of all these facts when they made the loans to their father; that the mortgages were illegal and should be canceled, and they so prayed. That the loan by Gilbert M. Richardson to their mother was in reality a loan by Shattuck & Hoffman, Richardson being merely a party interposed; that the executory proceedings in the name of Richardson were really proceedings taken out by Shattuck & Hoffman in furtherance of the arrangement made between that firm and their father by which the title to the Delhi plantation should be shifted from the succession of their mother to their father. The knowledge of all the facts of the case, which it is alleged the plaintiff company had, is claimed to have been communicated to them through Francis Smith, Caldwell & Co., who, it is asserted, acted as their agents in lending to Caldwell Peirce the moneys for which the mortgages held by the plaintiff stand as security. Further charging that plaintiff was

a foreign corporation transacting business in Louisiana, without having complied with Art. 236 of the Constitution. Plaintiff company, the American Freehold Land Mortgage Company, Limited, answered, declaring the validity of the father's appointment as tutor—denied intervenor's right to attack that appointment collaterally—alleged that they took the mortgages on the strength of the public record,s denied all knowledge of the facts charged to have been brought home to them—denied that they were doing business in Louisiana, but averred that they had complied with the provisions of Act No. 149 of 1890—and that the provisions of Art. 236 of the Constitution were inoperative until the passage of that act—they pleaded also the prescription of five years against the intervenors. They answered Caldwell Peirce's petition in injunction with practically the same allegations.

On the same day that the intervention of the heirs of Mrs. Peirce was filed in the present executory proceedings the same parties brought in the District Court for Concordia an independent suit against Shattuck & Hoffman, Richardson and J. Caldwell Peirce on grounds substantially the same as those urged in their interventions, and praying for a judgment canceling and setting aside the sales and transfers, and asking for judgment for fruits and revenues.

The curator *ad hoc* appointed to represent Shattuck & Hoffman and Francis B. Hoffman, answered, setting up that the British and American Mortgage Company, and not Shattuck & Hoffman, loaned the money to Mrs. Peirce, the payment of which was secured by the Richardson mortgage. On behalf of the parties the curator represented, he maintained the validity of Peirce's appointment as tutor, the regularity and validity of the sale made under the Richardson mortgage, and by way of reconvention prayed that that mortgage be reinstated against the property if the sale should be found to be illegal and void.

The two causes were consolidated and tried together. After trial a decree was rendered by the District Court recognizing intervenors as owners of the Delhi plantation, decreeing the two mortgages executed by Caldwell Peirce to the plaintiff to be null and void, and setting aside the sale made under the Richardson mortgage.

In the opinion of the court *a qua* the father, by reason of the fact that he was in community with his deceased wife, was authorized, under Art. 1146 of the Civil Code and the interpretation placed upon

that article in Bland vs. Lloyd, 24 An. 603, to buy the property though it was not community property, but it held that the appointment of the father as natural tutor was null and void for the reason that the certificate of the amount of the inventory of the minors' property had not been recorded.  From this judgment the plaintiff company, Shattuck & Hoffman and Francis B. Hoffman have appealed.  J. Caldwell Peirce has not appealed.  Appellees have asked no amendment of the judgment as rendered.

The opinion of the court was delivered by

NICHOLLS, C. J.   The attack upon the mortgages executed by J. Caldwell Peirce to the plaintiff company, in so far as it is based upon the claim that plainiiff was doing business in Louisiana in violation of Art. 236 of the Constitution, must fail.   The facts of this case bring it under the principles laid down in Reeves vs. Harper, 43 An. 516, and Scottish American Mortgage Co., Limited, vs. W. F Ogden, *ante*, p. 8.

Intervenors claim that the loan to Mrs. Peirce, though apparently made by Richardson, was in point of fact made to her by Shattuck & Hoffman, and that in the taking of the notes and mortgage and in the proceedings which resulted in the sale of the Delhi plantation, Richardson's name was simply used in order to interpose a third person between Shattuck & Hoffman and Mrs. Peirce and her heirs.   We find under the evidence no foundation for that charge. There is no reason assigned why at the time of the loan to Mrs. Peirce there should have been any concealment of the actual facts of the case.   The property belonged to her; she had a legal right to contract the debt she incurred and to grant the mortgage she did, and even up to the present time there has been no contention as to her not having been legally bound both as to the debt and as to the mortgage.   The loan in question made to Mrs. Peirce was really made to her by the British and American Mortgage Company, through Richardson, and the notes and mortgage given were held by that corporation and not by Shattuck & Hoffman.   It is charged that the sale made under the Richardson mortgage was the result of an agreement or combination between Shattuck & Hoffman and J. Caldwell Peirce, the father of the intervenors, to bring about for the benefit of the latter, and to the injury of the chil-

dren, the shifting of the title of the plantation to the husband from the succession of the wife. We do not find this to have been the fact. The correspondence between the firm and Peirce discloses that the British and American Mortgage Company, holders of Mrs. Peirce's notes and mortgage, had become alarmed at her death lest by some judicial proceedings a sale should be made in the settlement of her succession which would raise the mortgage and transfer their rights to the proceeds of sale. They were unwilling that this should happen, or that matters should remain any longer as they were; they therefore insisted upon immediate payment, or that a sale should be made and that their rights should be secured to their satisfaction. Peirce, so far from, at that time, seeking to transfer the title to himself, wrote a letter to Shattuck & Hoffman, complaining that immediate payment was being insisted upon, and the latter replied, explaining the exact situation and from what quarter came the demand. They informed Peirce that they had no control over the matter; that they had to follow the instructions of the company, between whom and Shattuck & Hoffman there seems to have existed business relations of some kind. It is not pretended that either Peirce himself, or the succession of his wife, was in a condition to make the payments which were exacted. The British and American Mortgage Company had the legal right to enforce payment, and neither Peirce nor the succession of the wife could control the corporation in the exercise of that right. They were without power to stay the executory proceedings which followed. The sale which resulted from these proceedings was a public one, at which any person was at liberty to buy. Had the seizing creditor bought precisely for the same price at which the property was adjudicated, there could certainly have been no legal obstacle in the way of its doing so, if the proceedings themselves were proper and legal. Nothing was done or alleged to have been done which was either intended to deter bidders or to have resulted in doing so. It is argued that the price bid was much below the actual value of the property, but the mortgagor, the mother of the intervenors, had herself waived the benefit of appraisement, and she was bound by her agreement. There was no legal reason why Hoffman, of the firm of Shattuck & Hoffman, should not buy the property at the offering. When the adjudication was made to him and the price (under the orders of the attorney of the seizing

creditor) was credited on the writ, the debt of Mrs. Peirce was instantly as between her and the British and American Mortgage Company paid and extinguished and the ownership of the property passed at once to Hoffman. The seizing creditor could have donated the price to the purchaser or they might have consented to payment of the price by means of novation. In either event the seized debtor could not object. (Baudin vs. Roliff, 1 N. S. 165; *Id.*, 8 N. S. 100.) Whether Hoffman ever paid the English and American Mortgage Company, or when or how they paid the amount of the bid was a matter between those parties which did not concern the seized debtor. All that the debtor could require was that the debt should be declared discharged. If either the seizing creditor or Hoffman, looking forward to the possibility of becoming a purchaser at the sale, had in view of that contingency made promises or arrangements (based upon that fact) with Peirce, this would have been doing with their own what they had the right to do. If the title passed to Hoffman by the sale (as it did) the seized debtors had no ground of complaint; certainly none so far as Hoffman was concerned that he should make use of his own ownership so as to benefit their father. They might be able to find fault morally with their father that he should not subsequently have given them the benefit of any arrangement which he had been able to make, but they could not make their father's preferring to follow his own interests than theirs (if such was indeed his course) turn to the disadvantage of Hoffman, who owed them no duty. In Amato vs. Erman & Cahn, 47 An. 976, referring to a complaint of a similar kind sought to be urged against mortgage creditors, we said: "If those parties had a legal mortgage on the property they were free to enforce it, and if they enforced it and cut off by becoming purchasers at the sale all rights of the creditors of Sorrel upon the property itself, transferring whatever claims creditors might have to the proceeds of sale, they were at liberty to do with their own what they pleased, and if they thought proper to transfer the property to a third person in order that Erman & Cahn might derive a benefit from it, that fact could not result in divesting them of rights which had legally vested in them under their execution. (Gilkerson, Sloss & Co. vs. Bond & Williams, 44 An. 844.) "The creditors might perhaps (if the special agreement was one which would enable their debtor to evade their pursuit in the future) attack the agreement

itself or make it turn to their own advantage, but they could not oust the purchaser from the property."

It can not be pretended here that the English and American Mortgage Company were not legally authorized, holding a valid mortgage to force the property to sale as they did, nor that Hoffman was not at full liberty to buy as he did. It would be a strange result if, notwithstanding the concurrence of those two facts, the exercise of both rights should be followed by the consequence that the property should remain the property of the heirs, of the debtor, not only without having themselves paid the debt for which it stood mortgaged, but freed from that debt directly and indirectly. It is not asserted that the English and American Mortgage Company in foreclosing had any other object in view than to safeguard and protect their own interests. When Hoffman bought at the sale he became bound for the price; when he paid this price he became entitled to protection defensively, and, within certain limits, as against the seized debtor and her heirs through the rights of the seizing creditor. There existed at once such a privity between the seizing creditor and the purchaser as to authorize him to call on the latter and appear and defend the title, or directly avail himself of any legal or equitable defence by which the creditor might oppose the action. Judice vs. Kerr, 8 An. 462; Upsher vs. Briscoe, 37 An. 154; Seawell vs. Payne & Harrison, 5 An. 255; Scott vs. Featherston, 5 An. 314; Wolf vs. Lowry, 10 An. 274; Coiron vs. Millaudon, 3 An. 664.

Whether this right of protection springs from defensive equitable subrogation or the application of the principle that the debtor should not be permitted to enrich himself at the expense of another (Childress vs. Allen, 3 La. 480), we need not here consider.

The intervenors have succeeded in this suit, as between themselves and their father, in reinstating in themselves the title of which they were divested by the suit of the English and American Mortgage Company. Their father acquiesces in that judgment. The plaintiffs in this suit have no further interest in the question of title than to see that their mortgage rights, which they acquired on the strength of the title of J. Caldwell Peirce, as it appeared of record under judicial proceedings, should be fully recognized and enforced.

It would not follow, as the necessary consequence of the intervenors being decreed to be the owners of the property, that plaintiff's mortgage rights should fall. Chaffe vs. Farmer, 34 An. 1021.

Francis B. Hoffman, however, as appellant, is interested in seeing that the purchase of the property as made by him be sustained, inasmuch as he subsequently transferred the title so acquired by him to J. Caldwell Peirce under warranty.

We will have, therefore, to examine into and decide whether the adjudication made to Hoffman divested the heirs of Mrs. Peirce of their interest in the property.

We have already said that Hoffman's title was beyond attack on the ground of any bargain or arrangement between himself or Shattuck & Hoffman and J. Caldwell Peirce; that a judicial sale should be resorted to for the purpose of transferring the property over from the succession of the wife to the husband. The proceedings which resulted in the sale, therefore, have alone to be considered.

The only attack made upon the judicial proceedings is, that in foreclosing their mortgrge the English and American Mortgage Company did so contradictorily with J. Caldwell Peirce as being tutor of his children when, as they contend, he was not such under the law.

If, at that time, Peirce was not their tutor, the company would have been entitled to call for the appointment of a tutor *ad hoc* to represent their interests under the proceedings then about to be taken. Art. 313 of the Civil Code declares that, " when the minor is without a tutor, any person who has a claim against him may apply to the competent judge to request that a tutor *ad hoc* be appointed to him, which tutor shall not be bound to give any security, but shall take an oath before the court who has appointed him to defend the interests of the minor according to the best of his knowledge." It will be seen from this article that in cases where parties have claims adverse to minors, their enforcement is not subordinated to the fact that at that time the general interests of the minors in the administration of their affairs should be protected by a tutor who had given bond, and otherwise complied with the law as to tutorship generally. The rights of creditors, as well as those of minors, was matter for consideration. The lawmaker, in dealing with that subject, deemed it perfectly consistent with proper protection of the minors that they should be represented defensively in litigation by parties whose fidelity was guaranteed simply by an oath to perform their duty. J. Caldwell Peirce would unquestionably have been the proper person to have

been appointed tutor *ad hoc* to represent his children had they been at that time without a regular tutor. He would presumptively be much more concerned in and for the welfare of his children than would a stranger. When the English and American Mortgage Company, in an examination of the proceedings in the matter of the succession of the wife, found that the father had been tutor of the children under a recital that he had complied with the provisions of the law, and that he had taken an oath as tutor, they were justified in believing, particularly under the decision in Stackhouse vs. Zuntz (36 An. 583), that J. Caldwell Peirce was legally authorized to represent his children as tutor—if not generally as tutor, at least defensively, and for the purpose of that particular suit.

We think it would be subordinating substance to mere form to have required that the father should have been appointed as a tutor *ad hoc* in that particular case, and to take therein a second oath. We are of the opinion that the proceedings carried on contradictorily with him as tutor were legal, and carried with them the legality of the sale to Hoffman.

Even had there been a secret understanding between Hoffman and J. Caldwell Peirce, the intent and object of which was to transfer the ownership of property from the heirs of Mrs. Peirce to the father, we do not think that fact could be made by the children to turn fo the injury of the plaintiffs. The record disclosed that their mother had executed a valid mortgage to the English and American Mortgage Company—that that company had validly enforced their mortgage rights on the property; that it had been purchased by Hoffman, against whose legal right to purchase nothing appeared; that it had been sold by Hoffman to Peirce, as between whom there was no reason to suppose that a legal disability existed either to sell or to buy. On the hypothesis that there was in fact some defect or vice in the title as between Hoffman, Peirce and Peirce's children, plaintiffs were no party to the proceedings or facts from which such defect arose. They knew nothing of such defect or vice. There was nothing to indicate such vice in the records. We can apply to them the language used in Chaffe vs. Farmer, 34 An. 1021, in respect to the intervenors in that case: "They acted in taking the mortgage upon the faith of a judicial sale translative of the property. They were therefore in good faith and entitled to protection."

For the reasons herein assigned, it is hereby ordered, adjudged and

decreed that the judgment herein appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the demands contained in the petition of intervention of Philip B. Peirce, Geraldine B. Peirce, wife of Samuel H. Coulsom; J. Caldwell Peirce, Jr., and Mary B. Pierce and contained in their petition in the suit of Philip B. Peirce *et al.* vs. J. Caldwell Peirce *et al.*, No. 1892 of the docket of the Eighth Judicial District Court for the parish of Concordia, to be recognized as the owners of the Delhi plantation in Concordia parish, and that the sales of said plantation made by the sheriff of said parish to Francis B. Hoffman on the 7th of May, 1887, and by Francis B. Hoffman to J. Caldwell Peirce on June 14, 1887, and the mortgages granted by said J. Caldwell Peirce to the American Freehold Land Mortgage Company of London, Limited, recorded in the mortgage books of the parish of Concordia be declared null and void and set aside, be and they are hereby rejected at their costs in both courts.

It is further ordered, adjudged and decreed that the injunction which issued herein on the petition of J. Caldwell Peirce be and the same is hereby set aside and the plaintiff, the American Freehold Land Mortgage Company of London, Limited, be and they are hereby authorized to proceed to seize and sell the property covered by their mortgage and referred to in their petition in accordance with the order of sale granted to them on their prayer. It is further ordered and decreed that J. Caldwell Peirce pay costs in both courts.