BLANCHARD, J.
William D. McCoy, father of plaintiffs, died in the year 1876 or 1877.
*311 He left surviving liim a widow, Oora D. McCoy, and four minor children.
He owned at the time of his death a tract of land — about 2S0 acres — upon which he made his home and where he died. This land was his separate property; it did not belong to the community of acquets and gains. •
After his death the widow and children continued to reside on the place.
The succession of the dead man was not opened, and not until the year 1889 did the widow apply to be recognized as natural tutrix of the minors.
In that year she made such application by petition to the district judge of the parish of Rapides, where she resided, and in this petition suggested as a suitable person to be appointed undertutor to the minors their uncle, Franklin Sneed.
In the prayer of this petition she asked an order for inventory and appraisement of the estate belonging- to the minors.
She further asked to be qualified as natural tutrix of the minors, and that Franklin McCoy be appointed undertutor.
Asking that Franklin McCoy instead of Franklin Sneed be appointed undertutor was a transparent error — clerical error — of the draftsman of the petition.
The same error was committed in the order of the judge also in the hand writing of the same draftsman.
This order, which followed the petition on the same sheet of paper, directed an inventory to be taken and appraisement made; directed that an abstract of the same be recorded in the mortgage book; directed that the petitioner be qualified as natural tutrix; and appointed Franklin McCoy as under-tutor.
Following this an inventory was taken and an appraisement made. The tract of 280 acres of land, heretofore referred to, with the improvements thereon, was appraised at $300.
This was in May, 1889. Later, in the same month, Mrs. McCoy took the oath as natural tutrix and Franklin Sneed took the oath as undertutor.
Neither at the time Mrs. McCoy qualified as natural tutrix, nor subsequently, was there any recordation in the mortgage book of an abstract of the inventory. Nevertheless letters of tutorship issued to her and she acted as tutrix.
In June following, Mrs. McCoy, in her capacity as natural tutrix, addressed a petition to the court setting forth that her revenues and those of the minors were not sufficient to support and educate the minors, and that she thought she could sell to advantage the 280 acres of land they owned. She prayed for the assembling óf a family meeting to consider the advisability of the sale, fix the terms, etc., and that the under-tutor of the minors, Franklin Sneed, be notified to attend the meeting.
The judge ordered the convocation of the family meeting and named two uncles and three friends of the minors to compose it. He further ordered that Franklin Sneed, undertutor, be given due notice of the meeting.
Notice issued to and was served upon Franklin Sneed, undertutor, to attend the family meeting. Franklin Sneed did attend it as undertutor and as such signed its proceedings in approval thereof.
The family meeting was held and advised the sale of the land for cash for the price of $350.
Whereupon, on the petition of the natural tutrix, the judge homologated the proceedings of the family meeting and ordered the land sold on the terms and at the price fixed by the family meeting. 1-Ie directed a writ of sale to issue to the sheriff and ex officio auctioneer to make the sale.
In this judgment of homologation reference is made to the presence of the undertutor at the deliberations of the family meeting and his approval of same. This undertutor was Franklin Sneed.
The sheriff, after due advertisement, offered the land at public auction and it was adjudicated to Louis Derbonne for $350 cash. Formal act of sale was executed to him and he entered into possession.
Later, he mortgaged the property, and in 1890 this mortgage was foreclosed at the suit of Wadsworth against Derbonne, and at the public sale which followed M. O. Mosely became the purchaser at the price of $250.
He entered into possession and held possession undisturbed until the present suit was filed in 1898.
The suit is brought by the children (now *313 of age), to whom Mrs. Oora D. McCoy (their mother) was, 10 years before, appointed and qualified as natural tutrix.
It attacks the probate sale of the 280 acres of land made to Derbonne in 1889 and the sheriff’s sale of the same property made to Mosely in 1896.
It seeks to have both sales annulled and to have the land in question decreed to belong to the petitioners.
One of the grounds of the attack is that Derbonne, the purchaser at the probate sale, took advantage of the want of capacity and experience of Mrs. McCoy and brought about the sale to him of the minors’ property at a figure far below its real value, and that all the proceedings taken and had, leading up to the sale and his purchase, were part and parcel of a scheme concocted by Derbonne to defraud the minors of their inheritance. In short, the charge is that the sale is void because of collusion and fraud practiced by Derbonne and consented to, through incapacity, by Mrs. McCoy.
The evidence in the record not only fails to sustain this charge, but we rise from its consideration, convinced, as were the district judge and judges of the court of appeal, that there was no fraud practiced, and that there was no sacrifice of the property at the probate sale.
The price Derbonne paid for it exceeded the appraisement put upon it by sworn appraisers who officiated at the inventory, and it equaled the amount at which the family meeting advised its sale. And it exceeded by $100 the amount Mosely paid for the property at sheriff’s sale in 1896.
Another ground of attack is that Franklin McCoy and not Franklin Sneed was named as undertutor to the minors; that Franklin McCoy did not qualify as such; that the qualification of Franklin Sneed as undertutor had no effect for he was never appointed undertutor; that because not so appointed his attendance upon the family meeting and approval of its deliberations as undertutor can be given no effect; and that the holding of the family meeting and its deliberations without the presence of an undertutor appointed to the minors was and is an absolute nullity.
What has been hereinfore recited in regard to the appointment of undertutor suffices to show that this ground is untenable. The man really appointed undertutor was Franklin Sneed, the uncle of the minors. It was he who qualified as such and who was repeatedly recognized by the probate court as such. Franklin McCoy never appeared. There was no such man in that neighborhood as Franklin McCoy. The minors had no relative or friend by that name. The transparent error of writing Franklin MeOoy instead of Franklin Sneed in the order appointing an undertutor cannot be allowed to have any effect, when from the petition of the mother it appears that Franklin Sneed, the uncle of the minors, was the man suggested for undertutor, and when it appears that it was he who qualified, he who officiated at every step as under-tutor, and that it was he who all the time thereafter was recognized by the court as undertutor.
Another ground of attack of the sale is that no abstract of inventory having been recorded in the mortgage book, the appointment and qualification of the natural tutrix was an absolute nullity.
Article 321 of the Civil Code declares that in the several cases in which the tutor is not required by law to give bond, it shall be the duty of the clerk of the court to furnish a certificate of the amount of the minor’s property according to the inventory on file in his office, which certificate must be recorded in the mortgage book, and this must be made to appear to the judge before he can make the appointmént.
Article 3370 of the Civil Code makes it the duty of judges to cause to be recorded the evidence of all legal mortgages resulting from appointments made by them of tutors to minors, and in default thereof such judges are liable to an action in damages, and even to removal from office.
Section 2360 of the Revised Statutes devolves upon every judge, who is charged with the duty of confirming a natural tutor, to cause an abstract of inventory showing the amount of the minor’s estate to be recorded in the mortgage book before he grants an order confirming such tutor, and it declares that any appointment or confirmation of such tutor before such recording shall have been done shall be null and void.
Various decisions of this court are extant construing these and kindred statutory enactments.
*315 In Stackhouse v. Zuntz, 36 La. Ann. 532, one of the grounds upon which it was insisted that a judgment was an absolute nullity, and its revival resisted, was that the mother and acting tutrix of the minor heirs was without authority to represent them and her confirmation as tutrix absolutely null because no abstract of inventory had been recorded in the mortgage book prior to the order of the judge confirming her. The court said
“It is true the language of article 321 of the Civil Code seems to be imperative in requiring that this abstract must be made out by the clerk and duly recorded, and the certificate of the recorder to the fact of its record presented before the judge makes the appointment. * * * If the article stood alone it would give great plausibility to the pretensions of defendant’s counsel; but it does not stand alone, and should properly be construed in conjunction with article 304 of the Civil Code. This latter article provides, among other causes for the removal of a natural tutor, his neglect to have this inventory made and recorded at the time or within the period prescribed by law — that is to say, as we construe it, as required by the article first above quoted. A tutor could not be removed unless he had first been appointed, and if his appointment, under the circumstances appearing in the instant case, was absolutely null; then there was really no appointment made and no tutor who could be removed. In other words, the provision for the removal of the tutor, in such case, precludes the idea that the order appointing him was wholly inoperative and absolutely void.”
This ruling was referred to and sustained in Security Co. v. Metcalfe, 49 La. Ann. 351, 352, 21 South. 549. See, also, Hewes v. Baxter, 45 La. Ann. 1058, 13 South. 817.
In Mortgage Co. v. Pierce, 49 La. Ann. 400, 21 South. 972, the ruling in the Stack-house Case was again referred to, the court holding, as condensed in the syllabus, that:—
“A sale of minor’s property, through- ex-ecutory process, taken contradictorily with their father as their tutor, is valid, though no certificate of the amount of the inventory of the property of the minors has been recorded as required by law, when the father, having been appointed as their natural tutor by the court, has taken an oath as such, and letters of tutorship have issued to him.”
It is true it was further said in that case that the father had the right, under such circumstances, to stand in judgment defensively for the minors as tutor ad hoc even though he be not authorized to administer generally as tutor.
But the case like the Security Co. Case, supra (both opinions handed down on the same day), is authority that the confirmation and qualification of a tutor by nature is not rendered absolutely null and void by the fact of failure of registry of an extract of inventory in the mortgage book.
The Stackhouse Case has stood as embodying judicial construction of the law on the subject notwithstanding this court has had several opportunities to overrule it. The two cases in 49 La. Ann. and 21 South. referred to the Stackhouse Case as authority, if not approvingly.
The object of the law in requiring recordation in the mortgage book of an abstract of inventory of the property of a minor is to give the legal mortgage, which the law accords him on the property of his tutor, effect against third persons, by recording the evidence of the mortgage.
The law holds the registry of an abstract of the inventory showing the value of the minors’ estate to be such evidence.
In the instance ' case the minors were not injured by failure to record an abstract o-f inventory. Their mother owned no property whatever at the time and has acquired none since. Mention of this is made merely as showing that no prejudice has resulted to them by the fact of nonrecordation of the abstract.
We must hold on the authority of stare decisis that the recognition by the judge of Mrs. McCoy as tutrix of her children in 1889, permitting her to qualify as such, and issuing to her letters of tutorship, were not absolute nullities. At least not so as to third persons who have acquired rights on the faith of the judge’s recognition of the tutrix as such. It follows that the family meeting, which she as tutrix caused to be convoked, and its proceedings, are not to be considered nullities because of the fact that there had been no registry in the mortgage records of an abstract of inventory.
*317 This being so. the sale to Derbonne which followed must be upheld as a valid adjudication of the minors’ property. And so, too, must the subsequent sale to Mosely by the sheriff, in enforcement of the mortgage Derbonne had consented to on the property, be upheld.
The judgment of the district court, which was affirmed by the court of appeal, is sustained as the proper adjudication of the issues herein involved.