(68 South. 194)

No. 21039.

NETTER v. SULLIVAN.

(April 12, 1915.)

*(Syllabus by the Court.)*

INSANE PERSONS ☞35—TUTORSHIP — MORT-
GAGES—FORECLOSURE—TITLE OF PURCHASER.

Where a person who is eligible to appointment as undercurator of an interdict takes the oath in that capacity on the same day and before the same notary as the curator, and is thereafter mentioned as undercurator in a petition for family meeting and in the order for its convocation, and attends such meeting, and approves its proceedings, and property mortgaged by the advice of such meeting is subsequently sold in foreclosure of the mortgage, the fact that no order of court appointing the undercurator is to be found will not invalidate the title acquired at such sale. In the absence of suggestion of fraud, or of prejudice to the interdict, the negative fact is controlled by the presumption in favor of the regularity of judicial proceedings; and in any event the acts of the party and of the court gave to the former a status as undercurator de facto which should protect the title.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 52, 53; Dec. Dig. ☞35.]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by C. L. Netter against M. Sullivan, wife of L. Williams, interdict. From a judgment condemning Henry Clark to accept title to certain realty, he appeals. Affirmed.

Legier & Gleason, of New Orleans, for appellant. Arthur B. Leopold, of New Orleans, for appellee.

MONROE, C. J. Henry Clark prosecutes this appeal from a judgment condemning him to accept title to certain real estate which was sold under executory process to satisfy a mortgage imposed by Lawrence Williams, curator of Mary Sullivan, his interdicted wife, pursuant to the advice of a family meeting and an order of court homologating the same.

The objection urged to the title is that:

"In the matter of the interdiction of Mary Sullivan * * * there was never any order appointing George Peterson undercurator of said interdict, and the proceedings conducted with the said Peterson as undercurator are null and void, because of the fact that no undercurator was appointed."

It appears that no order of court appointing Peterson undercurator was found in the interdiction proceedings, and no entry of such order was found upon the clerk's docket; but it also appears that he took the oath as undercurator on the same day and before the same notary as the curator; that thereafter, in petitioning the court to convoke a family meeting on behalf of the interdict, to consider and advise concerning the mortgage in question, the curator prayed that "George Peterson, undercurator to said interdict, be notified to attend"; that the order convoking the family meeting read, in part, "Let George Peterson, undercurator of said interdict, be notified to attend said family meeting;" that Peterson did attend said family meeting in the capacity of undercurator, acknowledged that he had received due notice, and approved the proceedings, which, as thus approved, were homologated by the court.

In view of the facts thus stated, and in the absence of any suggestion of fraud, or of prejudice to the interdict, we are of opinion that the presumption in favor of the regularity of judicial proceedings should control the negative fact that the order appointing Peterson undercurator was not found, and hence that it should be presumed that such an order was made, and that in any event the court's recognition of

Peterson (who might have been appointed to the position) as undercurator, considered in connection with the fact that he qualified in that capacity, gave him a de facto status which was sufficient for the protection of the title here in controversy. In McCoy's Heirs v. Derbonne, 109 La. 310, 33 South. 326, it appeared that it was the intention that Franklin Sneed should be appointed under-tutor of certain minors, but that, by error, the name "Franklin McCoy" was used in making the appointment, and that thereafter the title to certain real estate which had been sold by the advice of a family meeting was attacked, upon the ground, among others, that McCoy had never qualified as under-tutor, and had not attended the family meeting or approved its proceedings. This court, referring to Sneed and to his relation to the undertutorship, said:

"It was he who qualified as such, and who was repeatedly recognized by the probate court as such. Franklin McCoy never appeared. There was no such man in that neighborhood as Franklin McCoy. The minors had no relative or friend by that name."

And it was held that, as Sneed had qualified and officiated and been recognized by the court as undertutor, the title in question, in so far as its validity depended upon his acts in that capacity, should be sustained.

We find no error in the judgment appealed from, and it is affirmed.