## The People ex rel. G. R. Goldsmith v. The Highway Commissioners of Nankin.

*Constitutional law: Powers of Highway Commissioners and Supervisors.* Under the Constitution — *Art.* 10, § 11 — "the Board of Supervisors of each organized county may provide for laying out highways, constructing bridges, and organizing townships, under such restrictions and limitations as shall be prescribed by law." *Held,* that such provision did not contemplate exclusive control over the subject-matter by the supervisors; neither was it inconsistent with the exercise by Highway Commissioners of the power to lay out, alter or discontinue highways.

2. That by the amendment to the Constitution — *Laws* 1859, § 1102 — Highway Commissioners had authority to discontinue such roads as came within the exercise of their official duty without the intervention of a jury.

3. That the Board of Supervisors, having full control over the opening, altering and discontinuing of state and territorial roads (1 *Comp. L.* § 1081), the exercise of such power by Highway Commissioners was repugnant thereto, and not contemplated by the statutes.

*Heard April 25th. Decided May 7th.*

Certiorari to the Commissioners of Highway of the township of Nankin.

The Commissioners of said township made an order discontinuing a portion of the Monroe and Pontiac Territorial Road, running through the village of Wayne. And this writ was brought to review their proceedings.

*H. M. & W. E. Cheever,* for relator.

1. Admitting that all the proceedings are valid in form, we insist that Highway Commissioners have no power to discontinue a territorial road. If the power exists at all, without the intervention of a "jury" or "commissioners of a court of record," it is expressly delegated to the supervisors of the county. Under the old Constitution, no jury was required in laying out or discontinuing highways; and an act was passed giving to the Board of Supervisors power "to lay out, alter or discontinue, all state or territorial roads. — *Comp. L. p.* 364; *Sess. L.* 1861, *p.* 261; *Sess. L.* 1867.

2. There is no power either in Highway Commissioners or the Board of Supervisors, to act in any case under the Constitution of 1851, without the intervention of either a "jury" or "commissioners appointed by a court of record. *Constitution, Art.* 18, §§ 2, 14; *Id. Art.* 15, § 15; *Id. Art.* 10, § 11; *Sess. L.* 1860; 4 *Mich.* 95.

3. If it be urged that in discontinuing a road no "private property" is "taken" for public use, we answer:

*a.* If the whole matter is committed to the Board of Supervisors by the constitution, no statutory enactment can give it to the Highway Commissioners.

*b.* The discontinuance of a road may be just as effectual a "taking" of private property as the opening of one. Whatever hinders or obstructs the use of property, virtually takes it away. The "taking" contemplated is not an annihilation, but a preventing of the use. So the discontinuing a highway by which access is obtained to land,

depreciates, or wholly destroys, as the case may be, the value of the land. The value is in the use. The use gone, the value is gone.

We submit the proceedings of the Commissioners are void, and should be set aside.

*Moore & Griffin,* for respondent.

It is contended by counsel for relator —

*First,* That the power of laying out highways is committed exclusively to the Board of Supervisors by the constitution. — *Art.* 10, § 11.

*Second,* That, in any event, the Highway Commissioners can not act except through the intervention of a jury, or of three commissioners. — *Art.* 18, § 2.

1. In 1856, this court decided the act of 1848 repugnant to the provisions of section two, article eighteen, of the constitution adopted in 1851.

Subsequent legislation demonstrates that in the view of the law-making power "the charge of this matter," was not committed exclusively to the Board of Supervisors.

Prior to the adoption of the constitution in 1851, the power of the legislature to authorize Highway Commissioners to lay out a highway, is conceded.

Under the operation of the above decision, there was no law providing for the laying out of highways. At its next session of 1857, the legislature passed an act authorizing the Highway Commissioners to lay out, etc., a highway. Section eleven, article ten, of the constitution, was not considered by the legislature itself a limitation or restriction of its power to authorize Highway Commissioners to lay out highways, or we should not have the act of 1857: Nor yet the joint resolution of 1859, recognizing the validity of such grant of power to the Highway Commissioners: Nor the act of 1861.

Some respect is due to the opinion of a co-ordinate power of the government. — 17 *N. Y.* 241.

2. This act is not repugnant to the provisions of section two, article eighteen, as amended in 1860.

The amendment removed all constitutional difficulty. — *Sess. L.* 1859, *p.* 1102.

That it was the intention of the legislature which passed the joint resolution to clothe the Highway Commissioners with power to act without the intervention of a jury, is obvious from the whole history of legislation on this subject.

"The official discharge of their duties as Highway Commissioners," refers particularly to the official discharge of their duty in relation to the laying out, altering and discontinuing highways.

All prior statutes had made it such — the subsequent act of 1861 made it such.

There are but few, if any, other acts of Highway Commissioners to be performed in the "official discharge of their duty," as provided by law, which conflicted with this provision of the constitution, prior to the amendment.

But granting that the act is unconstitutional so. far as it authorizes Highway Commissioners to lay out a highway, may it not be constitutional so far as it authorizes them to discontinue a highway ?

A law unconstitutional in some of its provisions, may be valid as to the remainder. — *Cooley's Digest,* 611, *cases cited.*

The constitution has not expressly given to the Board of Supervisors power to discontinue a highway. Neither is discontinuing a highway taking private property for public use, within the meaning of section two, article eighteen.

On opening a highway, the public take the use and not the fee.

For such taking, the law provides the owner shall be compensated in damages. If the owner is once compensated

for the taking of his property, must he also be paid when it is returned to him?

It is of no consequence that such taking indirectly affects the value of the adjacent property. — 4 *N. Y.* 205.

3. The act of 1846 — *Comp. Laws,* § 1081 — shared· the fate of the act of 1848, and was annulled by ·the decision of this court, as repugnant to section two, article eighteen, of the. constitution.

In the absence of any special act providing for the laying out, etc., of state and territorial roads, it was undoubtedly the intention of the legislature to grant such powers to the Highway Commissioners.

COOLEY J.

The first objection to the jurisdiction of the commissioners in this case is, a want of constitutional power. If the objection· is valid, it must be so either *first,* because power to lay out, alter and discontinue highways is conferred upon the county boards of supervisors; or *second,* because the commissioners can only act after the necessity has been determined by a jury or by commissioners appointed by a court of record.

The constitution — *Art.* 10, § 11 — provides that "The board of supervisors of each organized county may provide for laying out highways, constructing bridges and organizing ·townships, under such restrictions and limitations as shall be prescribed by law." This section has never been construed by the legislature as taking from the township authorities the control over roads which they before possessed, and all the statutes which have since been passed on the subject have provided for the continued exercise of that control. A careful examination of the provision will show that it is not one which executes itself, but that it contemplates action by the legislature establishing restrictions and limitations· before it becomes operative. Even then it is not in its terms exclusive, and

there is nothing which would preclude the legislature from conferring power over this subject on the township highway commissioners even if they should also provide for the exercise of similar powers by the board of supervisors in specified cases, with suitable provisions to prevent conflict.

And whatever may have been the rule before 1860— upon which we express no opinion—we are satisfied that a jury or commissioners appointed by a court of record are not now essential to the validity of action by highway commissioners in either laying out or discontinuing highways. The amendment to the constitution adopted in that year was intended to do away with that necessity, and its terms are sufficiently comprehensive to embrace all cases which fall within the official duty of the commissioners.

The second and more serious objection to the jurisdiction is based upon the fact that the road, a portion of which was sought to be discontinued, was a territorial road; and over these, it is insisted, the highway commissioners are not vested with the power of discontinuance which they possess in other cases. This objection must prevail. Ever since 1846 there have been statutes authorizing the boards of supervisors to open, alter or discontinue state and territorial roads where, in their opinion, the interest of the public demanded it.—*Laws*, 1846, *p.* 240; *Comp. L.* § 1081 *to* 1085, *and* 359 *to* 363. Before that time, although a general control over such roads, when laid out and established, had been conferred on the highway commissioners and overseers (*Laws*, 1830, *p.* 7), yet even the board of supervisors do not seem to have been vested with power to discontinue, but only to make alterations.—(*Laws*, 1834, *p.* 91.) An unrestricted power in the supervisors to open, alter and discontinue, is hardly consistent with the possession of a similar power by the highway commissioners of the township, and it is easy to

see that there might be a conflict of authority in cases where neither would be paramount. We can not suppose the legislature would intentionally authorize two bodies to act upon the same subject with co-ordinate power, and with no provision for a final arbiter between them, when the effect would be to enable each to thwart the action of the other, and to play at cross purposes as local or other influences might move them. The terms of the general statutes empowering highway commissioners to discontinue roads, are satisfied by applying them to the roads which the commissioners have laid out, or which have become such by dedication and prescription; and, there are reasons which must have had great weight in inducing the legislature to refrain from conferring upon these local boards the authority to discontinue by piecemeal the thoroughfares which have been regarded of sufficient importance to be specially provided for by the territory or state. These roads are usually constructed with reference to convenience of passage between distant localities; and the general purpose might be defeated by leaving it to every township through which they pass to change or discontinue them. We are satisfied no such authority was conferred, and that the legislative act of the last session prohibiting its exercise was, in reality what it purported to be, only declaratory of the prior law.

The proceedings of the commissioners must be reversed for want of jurisdiction.

CAMPBELL and CHRISTIANCY JJ. concurred.

MARTIN CH. J. concurred in the result.