## No. 8653.

### W. & H. Stackhouse vs. James E. Zuntz.

Only absolute nullities in the original judgment can be opposed to its revival; and as a general rule, such nullities must appear on the face of the proceedings.

Where a suit is instituted in one parish, it may by consent of parties be transferred to another; and if such latter court has jurisdiction over the subject-matter, the judgment rendered therein, if not otherwise void, will be valid.

If a party to a suit dies during its pendency in the Supreme Court and his legal representatives are then made parties, and the case is remanded to the lower court for another trial, and at this trial the same counsel appear for such representatives and another judgment is rendered in said court and is again appealed to the Supreme Court, and the bond of appeal is signed by said representatives of the deceased litigant, the judgment appealed from and that rendered on said appeal will not be absolutely null by reason of the failure to suggest in the lower court the death of the litigant and to enter on the minutes the appearance of his representatives.

The discharge of the judgment debtor in bankruptcy cannot be successfully opposed to the action of revival, and his assignee is the proper party against whom the proceeding should be conducted.

APPEAL from the Civil District Court, for the Parish of Orleans. Lazarus, J.

H. B. Magruder, F. L. Richardson and E. D. White for Plaintiffs and Appellees:

1. The absolute nullity of a judgment is a good defence to an action to revive it. King vs. Pickett et als. 31 A. 1006.

34

| | |
|---|---|
| 36 | 529 |
| 45 | 1058 |
| 36 | 529 |
| 49 | 351 |
| 49 | 400 |
| 36 | 529 |
| 52 | 804 |
| 36 | 529 |
| e109 | 315 |
| 109 | 316 |
| 36 | 529 |
| 122 | 415 |

2.  A judgment against a dead man is an absolute nullity, and does not affect his heirs not made parties.  McCloskey, Bigley & Co. vs. Wingfield & Bridges, 29 A. 142, Edwards vs. Whited. 29 A. 650; 5 R. 508; 5 'A. 737.

3.  There can be no evidence of the service of petition and citation except the sheriff's return.  Harris vs. Alexander, 1 R. 30.

4.  If one dies pending a suit and his heirs are made parties, yet a judgment against him *eo nomine* will not bind them.  Montgomery vs. Sawyer, 100 U. S. 571.

5.  A natural tutrix cannot be appointed or confirmed by the judge until he has caused to be recorded in the mortgage book the clerk's certificate of the amount of the minor's property as shown by the inventory.  Any appointment of such tutrix before such recording is null and void.  Act 95 of 1869, sec. 2.

6.  All laws in the interest of minors must be strictly enforced.  Bernard vs. Vignaud *et als.* 1 N. S p. 30.

7.  The natural tutrix administers only by tolerance.  Labranche vs. Trepagnier, 4 A. 561.

8.  Appealing from a judgment and signing an appeal bond does not make one a party to the judgment not rendered against him.  Norton vs. Jamison, 23 A. 104.

W. S. *Benedict* for the assignee of the bankrupt, Appellee.

*Jos. P. Hornor* and *F. W. Baker* for Defendant and Appellant:

1.  No plea will be entertained and no evidence considered, which assails the validity of the judgment sought to be revived.  29 A. 69; 23 A. 173, 437; 34 A. 340.

2.  The sole issues that can be tried in a suit to revive a judgment are, whether it had ever been rendered, and whether it had become extinct.  30 A. 1331; 31 A. 326; 29 A. 69; 33 A. 342.

3.  A final judgment rendered by the Supreme Court is not amenable to an action of nullity. instituted more than one year after the date of the judgment, on the ground of error of fact and law.  Such a judgment has the force of *res adjudicata* as to the parties to it. 31 A. 467.

4.  To revive a judgment against a discharged bankrupt, the citation must be served on the assignee.  27 A. 242.

5.  The validity of a judgment appointing and confirming a natural tutrix, rendered by a court having jurisdiction of the persons and property of the minors, cannot be inquired into by a stranger, and such appointment cannot be a nullity until it is declared to be such by competent authority; and the heirs can be brought into court during the existence of such a judgment by service upon such natural tutrix.  *Arguendo* from 15 L. 173; 10 M. 485; 5 N. S. 624; 5 A. 565, 197; 2 A. 465; 1 Rob. 275; 7 A. 136; 11 A. 501.

The opinion of the Court was delivered by

Todd, J.   This is an action to revive a judgment rendered in the Fifth District Court of the Parish of Orleans on the 20th February, 1872.   The suit in which the judgment sought to be revived was rendered, was an injunction suit in which an order of seizure and sale, taken out in the District Court of the Parish of Plaquemines by the defendant, James E. Zunts, against a plantation in that parish, was enjoined by W. & H. Stackhouse, the owners of the plantation.

The debt for which the order issued was, in capital, $50,000, and upon final trial the injunction was dissolved, with twenty per cent dam-

ages. This is the judgment involved in this suit. It is brought against the administrator of the succession of Haywood Stackhouse, who died during the pendency of the original litigation, and his surviving widow; and also against the assignee of William Stackhouse, who, during the course of said proceedings in the first suit, surrendered in bankruptcy.

The revival of the judgment is resisted on the ground that the original judgment was an absolute nullity for several causes assigned, and which we will proceed to consider in their order:

1. It is urged that the court which rendered the judgment was without jurisdiction. As stated, the order of seizure and sale issued from the District Court of Plaquemines, and the injunction suit against it was instituted in the same court. After being filed, it was transferred by consent of the parties thereto to the Fifth District Court of the Parish of Orleans. This latter court had jurisdiction over the subject-matter of the suit, and in this important respect was a competent tribunal to try the case. Whatever may have been the tenor of the earlier decisions to which we are referred as to the effect of a waiver of the jurisdiction as to persons, it suffices to say that they have been expressly overruled by the later ones; and it is now the settled jurisprudence that parties may by consent waive personal jurisdiction and submit their controversy to the determination of another tribunal than that of their domicile, having jurisdiction over the subject-matter, and that this latter becomes thereby vested with complete jurisdiction over the cause. 29 A. 194; 31 A. 88; 30 A. 59; 33 A. 655.

The proceedings and judgment were not, therefore, void for this cause.

2. It is next urged that the final proceedings were conducted in the said Fifth District Court and judgment therein rendered, after the death of Haywood Stackhouse, and that neither his succession nor heirs were represented in said court.

This necessitates a brief history of the suit. Its institution in the parish of Plaquemines and its subsequent transfer to the Fifth District Court of New Orleans has been mentioned. After its transfer thereto, it was twice tried in the said Fifth District Court. From the first judgment there was an appeal to the Supreme Court. Whilst pending there, Haywood Stackhouse died. His death was suggested and an order entered making his heirs—who were his children—parties thereto. One of them was a major and the rest minors, purporting to be represented by their mother and natural tutrix. It does not appear from the record that this order was served, but from the secondary evidence

supplying the loss of the papers, we are satisfied that service of the order was duly made. In the further proceedings in the Supreme Court, these representatives of Haywood Stackhouse, deceased, appeared by counsel. The appeal resulted in a reversal of the judgment and a remanding of the case to the lower court for another trial. This trial was had, and the heirs purport to have been represented therein by the same counsel who had appeared for them in the Supreme Court and procured the reversal of the judgment. This second trial in the district court resulted in a judgment in favor of the defendant, Zuntz, dissolving the injunction, with damages; and this is the judgment before referred to and now sought to be revived.

From this judgment a second appeal was taken to the Supreme Court. The appeal bond was signed by the heir of age, assisted by her husband, and the tutrix of the minors. Counsel also appeared for the parties in the Supreme Court on this second appeal. The judgment of the district court was, in this instance, affirmed; and an application for a rehearing—which set up the same grounds of nullity against the proceedings mentioned above and that we are now considering—was made and refused.

It is contended that after the case was remanded for another or second trial in the district court, no order of revival and no formal appearance was entered for those that had been previously made parties in the Supreme Court. Such an entry would have been more regular; but considering that an appearance was made in that Court by the same counsel who had been previously conducting the proceedings, and that the order of appeal was taken in behalf of these representatives of the deceased, and the appeal bond was signed by them in person as stated; and furthermore, as the proceedings appear regular upon their face, we cannot conclude that the omission referred to was absolutely fatal to their validity and to that of the judgment.

3. The next ground of nullity alleged, is, that the mother and acting tutrix of the minor heirs was without authority to represent them, and in fact that her confirmation as tutrix was absolutely null, for this reason, that no abstract of the inventory of their estate had been recorded in the book of mortgages, prior to the order of the judge confirming her as natural tutrix.

The order, in question, is regular on its face, letters of tutorship were issued to her, under authority of which she acted in these proceedings and also in other proceedings relating to the interests of the minors. The matter of appointment or confirmation of the tutrix was clearly

within the power and jurisdiction of the judge making it, and the required abstract was recorded within a few days after the date of a second order of confirmation or appointment.

It is true that the language of article 321, of the Code, seems to be imperative in requiring that this abstract must be made out by the clerk and duly recorded, and the certificate of the recorder to the fact of its record, presented *before* the judge makes the appointment. This article is, in part, an embodiment of Act 95, of 1869; and if the article stood alone it would give great plausibility to the pretensions of defendant's counsel; but it does not stand alone, and should properly be construed in conjunction with article 304, of the Code. This last article provides, among other causes for the removal of a natural tutor, his neglect to have this inventory made and recorded at the time or within the period prescribed by law—that is, as we construe it, as required by the article first above cited.

A tutor could not be removed unless he had first been appointed; and if his appointment, under the circumstances appearing in the instant case, was absolutely null, then there was really no appointment made and no tutor who could be removed. In other words, the provision for the removal of the tutor in such case, precludes the idea that the order appointing him was wholly inoperative and absolutely void. Whatever the counsel may suggest as to the way or means by which this article became inserted in the Code, by the act adopting it as revived it became as much a part of the Code as any other article therein.

Besides, it may be well to state in this connection, that as a general rule absolute nullities in judicial proceedings are such as result from radical defects, omissions and irregularities, appearing on the face of the record and are not dependent on matters *en pais* to be established by evidence *aliunde*.

As has been stated in previous decisions on this subject, the law providing for the revival of judgments, did not intend to prescribe another method or way of annulling them; and, on the other hand, whatever may be their defects when rendered originally, the judgment of revival does not cure them. It merely preserves the judgment with whatever of strength or weakness it originally possessed; and the action to revive can only be successfully resisted by showing that, owing to nullities of so absolute a character, there never, in fact, existed or was rendered, a judgment to be revived.

4. In addition to the above, the assignee in bankruptcy of William Stackhouse interposes the discharge of the bankrupt against the revival

of the judgment against him.   This action is not intended to impose or renew any liability against the bankrupt, from which he has been discharged.   The assignee is the sole representative of the bankrupt's estate, and it may be that the judgment confers some right upon or against that estate, though the bankrupt may have been discharged from personal responsibility.   We think the assignee was properly made a party to the action, and the only one that could represent the bankrupt debtor or his estate.   The law accords to the judgment creditor the right to revive his judgment, and this right he possesses even if it is not accompanied with the right to execute or enforce it against the bankrupt;   and he cannot be deprived of this right by the bankruptcy of the debtor.   The judgment may still exist although the personal obligation of the debtor, which it imparts, may be extinguished or at least discharged.   Alter vs. Nelson, 27 A. 242;   Grayson vs. Norton, decided at Monroe, in 1878, and unreported;   Wheeless vs. Fisk, 28 A. 731.

It is also urged that Stackhouse was adjudicated a bankrupt during the pendency of the case in the Supreme Court, but that his assignee was not made a party.   The counsel is mistaken, the judgment became final in said Court on the 1st December, 1873, and the adjudication referred to, took place on the 27th of December, same year.

Our conclusion is that the lower court erred in dismissing the action.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered, it is now ordered, adjudged and decreed that the judgment rendered and signed on the 5th of March, 1872, in the late Fifth District Court of the parish of Orleans, in a case entitled W. & H. Stackhouse vs. James E. Zuntz, as set forth and described in the petition, be and the same is hereby revived.

Appellees to pay costs of both courts.

### On Application for Rehearing.

FENNER, J.   After an attentive consideration of the various charges of error assigned in this application, we find no merit in any of them, and no occasion to assign additional reasons in support of the original opinion.

One point, however, not referred to in that opinion requires mention, which is, that the judgment sought to be revived was rendered against Haywood Stackhouse, *eo nomine*, after his death.   The point is certainly a grave one; but considering the peculiar circumstances of this case

and the fact that his representatives were parties, before the judgment was rendered, and actually appealed from it to this Court, where it was affirmed, we are not prepared now to treat it as an absolute nullity of a character such as would justify us in refusing to revive the judgment.

It may be, that, in some form of proceeding, the judgment might be made operative against the representatives. On that subject we express, at present, no opinion.

The effect of the judgment of revival is not to lend any force or effect to the judgment which it does not intrinsically possess. We prefer to postpone such questions until proceedings necessarily involving them are presented for our consideration.

Rehearing refused.