## PENINSULAR SAVINGS BANK *v.* WARD.

1. HIGHWAY TAXES—VALIDITY.

A vote at a township meeting, ordering 1 per cent. to be spread upon the tax roll for highway purposes, cannot, where that amount was actually spread upon the roll, be treated as a vote of ½ of 1 per cent. in money, and a vote of highway labor as to the balance, in order to avoid the effect of 1 How. Stat. §§ 1326, 1327, which restrict the money tax for highway purposes to ½ of 1 per cent., but permit an assessment of highway labor at the rate of one-half day on $100 valuation.

2. SAME.

Nor can it be presumed in such case that a portion of the tax spread was authorized by the board of supervisors under 1 How. Stat. § 483, subd. 15, providing that the board may authorize townships to raise money, by a vote of the electors, for the building or repairing of highways.

3. SAME—STATE ROADS—REPAIRS—AUTHORITY OF BOARD OF SUPERVISORS.

The board of supervisors has no authority to raise a tax for the purpose of repairing, through its own committees or members, State and Territorial roads, thereby invading the jurisdiction of highway commissioners and overseers, whose duty it is to keep them in repair, even if the board has power to vote money for the repair of such roads under any circumstances.

4. TAX SALES—VALIDITY OF DECREE—DATE OF HEARING.

Under section 66 of the tax law of 1893 (Act No. 206, Pub. Acts 1893), authorizing substituted service of notice of hearing of the auditor general's petition for the sale of delinquent lands, and providing that if it shall be made to appear to the court, within five days after the day fixed for hearing, that any person, without fault on his part, has been prevented from filing objections to the tax, further time may be granted for that purpose, a decree of sale is void as to persons who did not appear, or otherwise waive the right to apply for further time, where it was rendered, and an adjournment taken, on the day following that fixed for the hearing.

5. SAME—COLLATERAL ATTACK—STATE BIDS.

A tax deed cannot be attacked collaterally upon the ground

| | |
|---|---|
| 118 | 87 |
| 118 | 93 |
| 118 | 87 |
| f 120 | 529 |
| 118 | 87 |
| 121 | 52 |
| f121 | 89 |
| f121 | 96 |
| 118 | 87 |
| 123 | 75 |
| 118 | 87 |
| 128 | 311 |
| 128 | 618 |
| 118 | 87 |
| s76NW | 161 |
| s79NW | 911 |
| 130 | 5685 |
| 118 | 87 |
| s76NW | 161 |
| e132 | 5268 |
| 132 | 488 |
| 133 | 5693 |
| 118 | 87 |
| f136 | 5158 |
| 136 | 5160 |
| 136 | 5161 |
| 136 | 5670 |
| 118 | 87 |
| 137 | 503 |
| 118 | 87 |
| 141 | 4189 |
| 118 | 87 |
| 143 | 98 |
| 143 | 4241 |
| 118 | 87 |
| 146 | 5506 |
| 118 | 87 |
| 154 | 5655 |
| 154 | 5656 |
| 154 | 5657 |
| 118 | 87 |
| 157 | 4416 |

that the lands were held by the State by virtue of a State bid at the time of the filing of the auditor general's petition, and were therefore improperly included therein under section 61 of the tax law, as construed in *Connecticut Mut. Life Ins. Co.* v. *Wood*, 115 Mich. 444.[1]

Error to Presque Isle; Kelley, J. Submitted June 15, 1898. Decided July 18, 1898. Rehearing granted December 28, 1898. Reargued February 15, 1899. Former opinion approved July 11, 1899.

Ejectment by the Peninsular Savings Bank against Arthur Ward and Charles H. Fults. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*Bacon & Palmer* (*Brennan, Donnelly & Van De Mark*, of counsel), for appellant.
*Cahill & Wood*, *amici curiæ*, on rehearing.

*Lot Nevius* and *Smurthwaite & Fowler*, for appellees.

Hooker, J. The plaintiff is admitted to have been the owner of the government title to the premises in question. The action is ejectment, and the defendants claim under tax deeds for taxes for the several years 1883, 1884, 1885, 1886, 1888, 1889, 1890, 1891, 1892, and 1893. The court directed a verdict for the defendants. Hence, if it be

[1] This point is an interesting one in its relation to other tax decisions rendered subsequent to the original opinion in the main case. Thus, while it was urged in *Detroit Fire & Marine Ins. Co.* v. *Wood, ante,* 31, that the provision of section 70 of the tax law, that " no sale shall be set aside after confirmation, except in cases where the taxes were paid or the property was exempt from taxation," was an unlawful restriction upon the equitable powers of the court, and the court declined to pass upon the question, the validity of the provision was afterwards sustained in *Spaulding* v. *O'Connor,* 77 N. W. 323, *Berkey* v. *Burchard,* Id. 635, *Brooks* v. *Auditor General,* 78 N. W. 125, *Shefferly* v. *Auditor General,* 79 N. W. 693, and *Wilkin* v. *Keith,* Id. 887, and it was held that, after confirmation, a sale could be set aside only for one of the causes specified, or for a want of jurisdiction to enter the decree. It was therefore contended by counsel upon the rehearing of the case at bar,

found that one of said tax deeds is valid, the judgment should be affirmed. It is conceded that those for the taxes of 1883, 1884, 1888, 1889, and 1890 are void.

Two points are raised upon the tax deed for the taxes of 1885, viz. :

1. That the highway tax was excessive.
2. That there was no apportionment of the State tax.

The record of the annual township meeting shows the following:

"The annual report of the township clerk was then read, and the following amounts were ordered to be spread upon the tax roll for the year 1885; that is to say: One per cent. for general township purposes, one per cent. for highway purposes, one-half per cent. for bridge loan."

The statute then in force (1 How. Stat. § 1326) provided that the commissioner of highways should report to the township board, at the annual meeting, an estimate of the amount of highway labor necessary, and the improvements necessary to be made in the highways and bridges during the year, and the amount of money tax that should be levied therefor, beyond the estimated labor. The statute restricts the labor to one-half day on $100 valuation, and the money tax to 50 cents upon such valuation. Section 1327 provides that a majority of the electors present may determine the amount of labor and money tax, within these bounds. As has been seen, the electors voted a money tax of 1 per cent. for highway purposes. It is

as well as in other cases, that the *Wood Case*, in 115 Mich., must have proceeded upon the theory that the question involved therein was jurisdictional; that, if so, it could be raised at any time and in any proceeding; and that the original decision in the present case should not stand. This contention, however, apparently overlooked the distinction, very clearly drawn in the rehearing opinion herein, between jurisdictional defects apparent upon the face of the proceedings, and those which can be established only by evidence *aliunde:* and a fair deduction from all of the cases would seem to be that a sale will not be set aside in any case, except for one of the reasons specified in section 70, or for defects going to the jurisdiction; and that, as to the latter, if the defect be one that can be shown only by evidence *dehors* the record, the attack must be made in a direct proceeding.—REPORTER.

urged that this was no more than it was within their power to raise, and that one-half of it should be treated as a vote of highway labor, and the remainder a money tax, in which case neither would be excessive. The record shows that the entire amount was spread, and if we might assume that no labor was done or commuted, which is improbable, we should still be confronted by the fact that the vote shows that the electors directed that amount to be spread upon the roll. We cannot conclude, therefore, that any part of it was intended as a vote of highway labor. It is also suggested that we may assume that a part of the amount spread was a tax authorized by the board of supervisors, under 1 How. Stat. § 483, subd. 15; but we think, in view of the vote of the township, that the presumption is to the contrary.

We consider it unnecessary to discuss the question upon the apportionment.

The tax of 1886 is attacked upon the ground that $1,000 was raised upon the following resolution:

" Because the board of supervisors passed the following resolution: 'Resolved, that the sum of $1,000 be raised by tax for the current year, and that this sum be expended upon the State and Territorial roads within the county, and that each member of this board be made the agent of this board to superintend the expending of the sum of $100 thereof, and to designate the place or places where the same shall be expended, but to place at least 50 per cent. of said amount within the townships represented by them, respectively.'"

It is contended that the resolution should have designated the road or roads upon which it was to be expended, and that it was not competent to apportion it out to the several supervisors to expend according to their judgment.

We infer from this resolution that it was the aim of the board to repair the Territorial and State roads. Sections 9 and 11 of article 10 of the Constitution provide:

" The board of supervisors of any county may borrow or raise by tax one thousand dollars for constructing or repairing public buildings, highways, or bridges; but no

greater sum shall be borrowed or raised by tax for such purpose in any one year, unless authorized by a majority of the electors of such county voting thereon."

"The board of supervisors of each organized county may provide for laying out highways, constructing bridges, and organizing townships, under such restrictions and limitations as shall be prescribed by law."

In *Attorney General* v. *Board of Sup'rs of Bay Co.*, 34 Mich. 46, it was held that the power of the board, under these provisions, was limited by the statute. 1 How. Stat. chap. 17. Subdivision 7, § 11, of said chapter (compiler's section 483), authorizes the board to raise money by tax for any of the purposes named in the act, but restricts it to $1,000 per year for the purpose of repairing highways, etc. The restriction does not purport to confer any power, and the power to repair roads must be sought elsewhere. Section 497 authorizes the board to cause to be laid out, established, altered, discontinued, or opened all State and Territorial roads. The three following sections pertain to this power, and it has been held that these four sections limit the powers given by section 11 of article 10 of the Constitution to Territorial and State roads. See *People* v. *Highway Com'rs of Nankin*, 15 Mich. 347; *Attorney General* v. *Board of Sup'rs of Bay Co.*, 34 Mich. 46. So far we find no authority for the expenditure of money by way of repairs upon State or Territorial roads, and our attention is not called to any statute conferring it. The duty of repairing these roads is upon the township. 1 How. Stat. § 1321. In *Attorney General* v. *Board of Sup'rs of Bay Co.*, *supra*, it is said:

"Taxes and loans, when authorized to be raised by any public body, must be raised under the implied condition that they are to be applied to the public uses under the control or care of that body. They cannot be raised for the purposes or uses of others, unless such a power is plainly given, and such a power cannot be given for all purposes. The highways and roads are put under their control by the Constitution, not absolutely, but under legal restrictions. Those legal restrictions have confined them to State and Territorial roads. Other roads

are put under other officers, to avoid a clashing of jurisdictions. The county board can have no occasion to raise money for other than its own roads, and must exercise its own judgment in expending it."

The law plainly imposes upon townships the burden of repairing these roads, and it does not seem to have ever required or permitted counties to keep them up. They are State roads, not county roads; and the State has not imposed the duty of maintaining them upon counties, though it did allow the counties to construct them. Whether this may now be done at county expense, in view of section 1321, we need not consider. But the power to repair appears to be conceded by counsel, and as we have not the aid of a discussion of this question, and may have overlooked some statute or reason leading to a different conclusion upon this point, we do not decide that the board may not raise money for the repair of such roads. At all events, we are satisfied that the board of supervisors had no legal authority to raise this tax for the purpose of repairing, through its own committees or members, State and Territorial roads, thereby invading the jurisdiction of highway commissioners and overseers, whose duty it is to keep them in repair. We must therefore hold that the deed for the tax of 1886 was void.

The deed for the tax of 1891 is said to be void for several reasons. A discussion of one will suffice. The day set for the hearing of the auditor general's petition was November 14, 1893,—the second day of term. The decree was made and court adjourned on the 15th. This proceeding is governed by the act of 1893. Section 66 of the law provides that—

"If, within the first five days after the day fixed in such notice for the hearing of such petition, it shall be made to appear to the court that any person has been prevented from filing objections to any tax, without fault on his part, such further time may be granted for that purpose as may seem proper, not exceeding five days." Act No. 206, Pub. Acts 1893.

It is urged that this is but an irregularity; that jurisdiction of the person was acquired by the publication, and that, though the decree might be vacated in a direct proceeding, it cannot be attacked collaterally; and that it is like a judgment entered upon a premature default.

Our decisions make a distinction between cases where personal service is obtained, and those of substituted service. In the latter the judgment is void if the statutory requirements are not followed. Thus, in attachment cases it has been held that the premature filing of a declaration, or the want of a valid default, rendered the judgment a nullity. See *Steere* v. *Vanderberg*, 67 Mich. 536; *Nugent* v. *Nugent*, 70 Mich. 56. We are constrained to say that this avoids the decree as to those who have not appeared, or otherwise waived the right to apply for further time.

The deeds for the taxes of 1892 and 1893 are said to be void for the reason that the lands were not subject to sale, inasmuch as it appears upon this record that, at the time the petition was filed, they were held by the State by virtue of a State bid. If that was true, they should not have been included in the petition; but this question cannot be raised collaterally. The decree has determined the contrary. *Cole* v. *Shelp*, 98 Mich. 56; *Kneeland* v. *Wood*, 117 Mich. 174; *Muirhead* v. *Sands*, 111 Mich. 487. The only way to reach such questions is in a direct proceeding, or possibly in equity, under proper circumstances.

It follows that the judgment of the circuit court was correct, and it is affirmed.

MONTGOMERY, MOORE, and LONG, JJ., concurred. GRANT, C. J., did not sit.

ON REHEARING.

HOOKER, J. The opinion filed in this cause upon the original hearing will be found at page 88, *ante*, and the case is there made to turn upon tax deeds for the taxes of

1892 and 1893. It was contended that these were void, for the reason that, at the times the respective petitions were filed to foreclose the lien of the State for the taxes for those years, the land was held by the State, having been bid in for the tax of 1891. The subject was not discussed by counsel for the plaintiff in their brief, further than to claim that the proceedings were void, under the case of *Connecticut Mut. Life Ins. Co.* v. *Wood,* 115 Mich. 444. The opinion attempted to distinguish the cases; that being a proceeding to set aside the sale and cancel the deed, while this is ejectment. It was said that the deed could not be thus attacked collaterally. The case was reheard upon this point, it not having been discussed before.

Whether or not the lands in controversy were, at the time the petition of the auditor general was filed, lands previously bid off in the name of the State, and thus held, was a question of fact. The court could not take judicial notice of it, yet, should it be proven, it would become the duty of the court to dismiss the petition as to such lands, because the act indicates that it was not the purpose of the legislature to have them sold. The law says that such lands "shall not be included in the petition," and counsel say that "the owners of such lands have a right to rely upon their not being included." It is urged that this takes all such lands out of the jurisdiction of the court, and that there can be no valid decree against such lands, for the court had no jurisdiction of the subject-matter.

It is a common saying that the proceedings of a court are void where there was no jurisdiction of the subject-matter. Thus, a court of equity could not render a judgment in *assumpsit* or ejectment, or adjudge one guilty of homicide, and punish him criminally for the offense. A justice cannot render a valid judgment for over $100 in a case of tort, nor can he make orders relating to the administration of estates of deceased persons. Instances might be multiplied. In all of these cases, where the want of jurisdiction appears on the face of the proceedings them-

selves, any court may treat them as void.    And it will be found that most, if not all, of the authorities cited by counsel in support of the contention that this judgment was void, rather than voidable, are such cases.

Cooley, Const. Lim. ( 6th Ed.) 491, says, "A court has jurisdiction of any subject-matter if, by the law of its organization, it has authority to take cognizance of, try, and determine cases of that description." Where there is a want of it, consent cannot confer it.    But we have not such a case.    It will hardly be pretended that this decree would be void if the defendant had appeared and defended upon the ground relied on, and the court had found the fact against him.    But, where the defect does not appear upon the face of the record, the rule is different.    A justice has no jurisdiction over civil actions for libel, and he has no jurisdiction in replevin when the value of the property exceeds $100.    It goes without saying that any attempt to render a judgment for libel will appear upon the record.    The same may not be true in the replevin case.    The affidavit and writ may state the value as $100. Yet the property may actually be worth $1,000, and it may be so proven, yet the justice may render a judgment for the plaintiff for nominal damages.    The effect is that the plaintiff succeeds in getting an adjudication in replevin concerning property worth $1,000 in justice's court. No one doubts that the defendant's only remedy is by a direct proceeding.    He cannot treat the judgment as void, or attack it collaterally upon the ground that the justice had no jurisdiction of the subject-matter.    True, that issue was not raised by the pleadings nor upon the trial; the defendant may not have even been served with process, or may not have appeared, or there may have been no testimony tending to show that the property was not worth more than $100; but it will be considered a matter necessarily involved in the adjudication, and therefore not subject to collateral attack.    Nevertheless the fact remains that, under the law, the justice had not jurisdiction of the subject-matter, and the defendant's right was to a

trial elsewhere. The only appreciable difference between such a case and this is that in the replevin case the affidavit alleges that the property is not worth more than $100, while here it is not alleged that the State does not hold the land on a State bid. But that is not conclusive of the question, nor does it follow that it was raised by the pleadings or passed upon at the trial. Indeed, it cannot be raised upon the trial, under the general issue, to oust the court of jurisdiction, and damages to the amount of $500 may be given if return is waived. *Henderson* v. *Desborough*, 28 Mich. 170. Apparently, the court considered the question waived, which is not consistent with the idea that it acquired no jurisdiction. We can hardly suppose that the court meant that the filing of a proper affidavit placed the question of jurisdiction beyond attack. A plea in abatement might raise such an issue, but, in the absence of such an issue, the judgment would be good, and could only be reversed by an appeal, and a plea to the jurisdiction, or some proceeding equivalent thereto.

Another such case is found in Wisconsin. A Wisconsin statute fixed the limit of a justice's jurisdiction in replevin at $200. The affidavit alleged the value at less than $200, but on trial it was found to exceed $200. The court said:

"If the affidavit on which the writ of replevin issued had not stated the value of the chattels, or had stated it over $200, the justice would have taken no jurisdiction, whatever the value might be in fact, and the whole proceeding would have been *coram non judice*. But, because the affidavit stated the value under $200, it gave the justice jurisdiction to issue the writ and to entertain the action, whatever the value of the chattels might be in fact. His jurisdiction of the action rested on the affidavit, independently of the value of the chattels in fact, until his judgment should determine the value. If that had found the value not to exceed $200, the jurisdiction conferred by the affidavit would have continued for all purposes, whatever the value might be in fact. When that found the value to exceed $200, the jurisdiction of the action, derived from the affidavit, ceased for all purposes, except the statutory judgment of abatement, independently of the

value in fact.   But that determination ousted the jurisdiction only thenceforth; it did not operate to defeat the jurisdiction theretofore conferred by the affidavit,—to issue the writ and to entertain the action.   Further jurisdiction of the action on the merits ceased, not by the mere fact that the value exceeded $200, but by the judicial determination of the fact.   Until such determination, the value stated in the affidavit was conclusive of the jurisdiction."   *Darling* v. *Conklin,* 42 Wis. 478, 480.

Van Fleet, Coll. Attack, § 60, says:

"In a court of limited jurisdiction in regard to value of property, if the alleged value is within the limit, the court will have jurisdiction, although the actual value may exceed the limit; and the court may determine that the value is too great, but, after that fact is determined, the court simply loses jurisdiction to proceed further.   It does not lose it from the beginning, so as to make all parties trespassers, as it would if its jurisdiction depended upon the fact of value."

But we must conclude from all this, where the jurisdictional defect does not appear upon the face of the record, not that the court has jurisdiction of the subject-matter, but that the assumption of such jurisdiction, though under a mistake of fact, and the rendition of judgment, involve the finding that the necessary facts exist to give jurisdiction, as conclusively as though the issue were expressly made.   Suppose the petition alleged that the State did not hold the lands; would we not assume that the same was proved to the satisfaction of the court?   And yet it would be no more likely to be than as though it were not alleged. It has been said that:

"Jurisdiction [of the subject-matter] always depends upon the allegations, and never upon the facts.   When a party appears before a judicial tribunal and alleges that a certain right is denied him, and the law has given the tribunal the power to enforce that right,—his adversary being notified,—it must proceed to determine the truth or falsity of his allegations.   The truth of the allegations does not constitute jurisdiction.   The tribunal must have jurisdiction before it can take any adverse step.   Its jurisdiction

118 MICH.—7.

necessarily has to be determined from the allegations."
Id.

If this is not so, we have the absurdity of being obliged
to try the merits to determine the question of jurisdiction.
Manifestly, if the allegations are inadequate to confer jur-
isdiction, the want of jurisdiction appears upon the face of
the proceeding.    If they are adequate, there is certainly
jurisdiction to inquire; *i. e.*, try the question raised by
the pleadings.    Is it not paradoxical to say that the court
has jurisdiction to try the case, but no jurisdiction to
render a judgment?    And that, notwithstanding the right
to try and determine the case, its determination has no
force, but may be set at naught by the lowest court in the
land, on a trial of the merits, even after affirmance by a
court of last resort?    Such is the logical consequence of
saying that a judgment may be attacked collaterally by
matters outside of the record.

In *Reg.* v. *Bolton*, 1 Adol. & E. (N. S.) 66, 72, Lord
Denman says:

"Magistrates cannot, as it is often said, give them-
selves jurisdiction merely by their own affirmation of it.
But it is obvious that this may have two senses.   In the
one, it is true; in the other, on sound principle and the
best-considered authority, it will be found untrue.   Where
the charge laid before the magistrate, as stated in the
information, does not amount in law to the offense over
which the statute gives him jurisdiction, his finding the
party guilty by his conviction in the very terms of the
statute would not avail to give him jurisdiction.   The
conviction would be bad on the face of the proceedings, all
being returned before us.   *   *   *   But, where a charge
has been well laid before a magistrate, on its face bringing
itself within his jurisdiction, he is bound to commence the
inquiry.   In so doing he undoubtedly acts within his jur-
isdiction.   But in the course of the inquiry, evidence
being offered for and against the charge, the proper, or,
it may be, the irresistible, conclusion to be drawn may be
that the offense has not been committed, and so that the
case, in one sense, was not within the jurisdiction.   Now,
to receive affidavits for the purpose of showing this is

clearly, in effect, to show that the magistrate's decision was wrong, if he affirms the charge, and not to show that he acted without jurisdiction; for they would admit that in every stage of the inquiry, up to the conclusion, he could not but have proceeded, and that, if he had come to a different conclusion, his judgment of acquittal would have been a binding judgment, and barred another proceeding for the same offense.  *  *  * · The question of jurisdiction does not depend on the truth or falsehood of the charge, but upon its nature.    It is determinable on the commencement, not at the conclusion, of the inquiry."

Mr. Justice Brewer, in the case of *Cooke* v. *Bangs*, 31 Fed. 640, 644, expressed his opinion of the rule as follows:

"A justice of the peace  *  *  *  has no jurisdiction to try a man for felony, or to sentence to the penitentiary. That is a subject-matter which is entirely outside of his jurisdiction.    If he assumes to try a man for manslaughter, and sentences him to the penitentiary, he is proceeding in a direction which is entirely outside of the scope of his jurisdiction.    On the other hand, he may have jurisdiction of assaults and batteries, and does, in most States. Suppose he proceeds to try a man charged with assault and battery, and suppose, in fact, the assault and battery was committed outside of the county over which his jurisdiction extends; then, although his judgment would be erroneous, and in excess of his jurisdiction, yet, having jurisdiction of the subject-matter of assault and battery, and of the person of the defendant, it lies with him to determine whether such particular assault and battery comes within his jurisdiction, and his determination, though erroneous, ought not to subject him to an action for damages.    He has jurisdiction of the subject-matter, and it is for him to determine whether the case is within his jurisdiction.    He has the right to determine the question; and although he may determine wrongly, and although it may be a case which does not come within the limitation of his jurisdiction, and although he may have exceeded his authority, yet he had the power and the right to determine whether or no he had that jurisdiction, and it cannot be said to be a case wherein the entire subject-matter was outside of his jurisdiction."

The question has been before many courts.    Thus, in *Poor* v. *Boyce*, 12 Tex. 440, it was said:

"The allegations of an administrator's petition to sell land, and not their truth, confer jurisdiction; and, if those allegations are sufficient, all other questions are concluded collaterally."

See, also, *Stuart* v. *Allen*, 16 Cal. 473 (76 Am. Dec. 551).

Again:

" An allegation of citizenship of another State gives the federal court jurisdiction, and the falsity of such allegation does not make the judgment void." *Erwin* v. *Lowry*, 7 How. 172.

"Where the jurisdiction of a court to lay out a highway depended upon the refusal of the selectmen so to do, a judgment laying it out is not void because the petition was false on that point." *Huntress* v. *Effingham*, 17 N. H. 584.

In *State* v. *Gary*, 33 Wis. 93, a person was summoned before a county judge in Wisconsin, to be examined in regard to his property for purposes of taxation. He claimed that, on account of his residence being in another State, he was not liable to be taxed, and applied for a writ of prohibition, on the ground that the judge had no jurisdiction. But the court said that the jurisdiction "depended wholly on the making and presentation to the judge of the affidavit and other papers required by the statute," and not upon the facts.

The most that can be said is that, in a statutory proceeding like this, "we must be able to gather from the allegations, either directly or inferentially, that the party was seeking the relief granted, or that he was entitled thereto." Mr. Van Fleet (Coll. Attack, §§ 61, 62) says:

" A large number of cases are cited in chapter 8, *infra*, where the judgment is not void, although the affidavit, complaint, or petition showed affirmatively that the plaintiff had no cause of action whatever. These illustrations show that there is no connection between jurisdiction and sufficient allegations. In other words, in order to 'set the judicial mind in motion,' or to 'challenge the attention of the court,' it is not necessary that any material allegation

should be sufficient in law, or that it should even tend to show facts that are sufficient. If that were the rule, the absence of any material allegation would always make the judgment void, because it cannot be said that such a complaint has any tendency to show a cause of action. It will be seen from the cases about to be cited that, when the allegations are sufficient to inform the defendant what relief the plaintiff demands,—the court having power to grant it in a proper case,—jurisdiction exists, and the defendant must defend himself. Thus, in Indiana, where a judgment of the board of county commissioners establishing a gravel road was attacked collaterally on account of a defective petition, the court said: 'If there was any petition at all, invoking the action of the commissioners, its sufficiency cannot be collaterally questioned.' *Ricketts* v. *Spraker*, 77 Ind. 371, 374. A judgment declaring a person insane is not void, when the whole proceeding shows enough to 'fairly inform' the defendant and his friends that the claim was that he was insane, and that an inquiry thereon was to be held. *In re Latta*, 43 Kan. 533. 'If the petition sets forth facts sufficient to challenge the attention of the court with regard to its merits, or to authorize the court to deliberate with respect thereto,' its judgment will not be void. *Head* v. *Daniels*, 38 Kan. 1. If a complaint to sell land for taxes is sufficient 'to challenge the attention of the court,' a judgment thereon is not void because the complaint would have been bad on demurrer. *McGregor* v. *Morrow*, 40 Kan. 730. In an early case the supreme court of Illinois, in speaking of a collateral attack on a guardian's sale of land, said: 'Enough must appear, either in the application or the order, or at least somewhere upon the face of the proceeding, to call upon the court to proceed to act; and all agree that, when that does appear, then the court has properly acquired jurisdiction, or, in other words, is properly set to work.' *Young* v. *Lorain*, 11 Ill. 624 ( 52 Am. Dec. 463 ). If enough appears 'to call upon the court to proceed to act' ( *Mulford* v. *Stalzenback*, 46 Ill. 303, 307 ), or if the allegations were sufficient 'to cause the judge to act' (*Galena, etc., R. Co.* v. *Pound*, 22 Ill. 399, 414 ), in a special proceeding, or if there was 'something stated to amend by' (*Spoors* v. *Coen*, 44 Ohio St. 497 ), the proceeding is not void collaterally. But in the cases above mentioned, where the allegations showed affirmatively that no cause of action existed, the attention of the court was not challenged, nor was it called upon

to act, by any material allegation, nor was there any such allegation to amend by. Hence I conclude that allegations immaterial and wholly insufficient in law may be sufficient 'to set the judicial mind in motion,' and to give a wrongful but actual jurisdiction, which will shield the proceedings from collateral attack. It seems to me that the Indiana case above cited, which was a special statutory proceeding before a board of inferior and very limited judicial power, announces the true and only logical rule, namely, that if there is any petition at all, invoking the action of the court, its judgment is not void.

"The courts of New York are not able to stand by their early rule that, where a single material allegation is omitted from a petition in a special proceeding, it is void. Thus, a fine for the violation of an ordinance was collaterally attacked because the board had no power to pass it. The court, assuming that to be true, said: 'The justice of the peace had jurisdiction of the subject-matter of the action, being for the recovery of a penalty less than two hundred dollars. * * * The jurisdiction of the magistrate was not derived from, and did not depend upon, the act which is challenged, but upon the general statutes of the State.' *Hallock* v. *Dominy,* 69 N. Y. 238, 240. In other words, having the defendant before him, and having jurisdiction to grant the relief demanded in a proper case, his judgment was not void, even though the allegations showed affirmatively that no cause of action existed in that case. This being a special statutory proceeding in restraint of personal liberty, how the logic on which this case rests can be reconciled with the earlier decisions it is difficult to understand. If a special proceeding is not void where the petition shows affirmatively that no cause of action exists, it would seem to follow, as a necessary sequence, that the failure of the petition to show a cause of action on account of the absence of one or more material allegations would not make it void. * * *

"The supreme court of California said: 'The first point decided by any court, *although it may not be in terms,* is that the court has jurisdiction; otherwise, it would not proceed to determine the rights of the parties.' *Clary* v. *Hoagland,* 6 Cal. 685, 688. The supreme court of Wisconsin having erroneously determined that it had jurisdiction (the case not showing the point), and rendered judgment, it was held not void, because the court had power to decide on its own jurisdiction. *State* v. *Waupaca*

*County Bank*, 20 Wis. 640.   *   *   *   'Where jurisdic-
tion depends on the finding of a particular alleged fact,
the exercise of jurisdiction implies the finding of that fact.'
*Thornton* v. *Baker*, 15 R. I. 553 (2 Am. St. Rep. 925).
*   *   *   'The assumption of authority is an assertion of
jurisdiction, without any formal statement of the facts
essential to give jurisdiction.'   *Osborn* v. *Sutton*, 108 Ind.
443, 445.   *   *   *   'Where a court of general jurisdic-
tion assumes jurisdiction, the existence of all facts neces-
sary to confer jurisdiction are presumed to exist.'   *Jack-
son* v. *State*, 104 Ind. 516; *Sims* v. *Gay*, 109 Ind. 501,
503.   So, in Alabama, it is said that action of the court
implies the previous ascertainment of the preliminary
jurisdictional facts, and that its decision on those facts
cannot be called in question collaterally.   *Wyatt's Adm'r*
v. *Steele*, 26 Ala. 639, 650; accord, *Vosler* v. *Brock*, 84
Mo. 574, 578.   Judicial action is an adjudication not only
of the facts actually determined, but equally so of all
precedent matters which should have been determined.
*Ney* v. *Swinney*, 36 Ind. 454.   *   *   *   The Supreme
Court of the United States, speaking of a collateral attack
on an administrator's sale of land made in obedience to a
private statute, said : 'In making the order of sale, the court
is presumed to have adjudged every question necessary to
justify such order or decree, viz., the death of the owner ;
that the petitioner was his administrator ; that the personal
estate was insufficient to pay the debts of the deceased ; that
the private act of assembly, as to the manner of sale, was
within the constitutional power of the legislature; and
that all the provisions of the law as to notices which are
directory to the administrator have been complied with.'
*Florentine* v. *Barton*, 2 Wall. 210, 216.   A judgment
by default bars the parties as conclusively, collaterally, as
though they had framed issues, and had a trial, and been
defeated.   *Goebel* v. *Iffla*, 48 Hun, 21.   The assumption
of jurisdiction and the exercise of authority is a decision
upon the question of notice, without any formal entry
declaring the notice sufficient.   *Updegraff* v. *Palmer*,
107 Ind. 181, 182; *Jackson* v. *State*, 104 Ind. 516, 520.
*   *   *   Collaterally, an administrator's order to sell land
is an implied and conclusive adjudication that the sale
was necessary, and that notice was duly given (*McDade*
v. *Burch*, 7 Ga. 559, 50 Am. Dec. 407); and an order
granting relief is an adjudication of every fact essential to
the validity of the order.   *Reynolds* v. *Faris*, 80 Ind.
14, 19; *Pendleton & Eden Turnpike Co.* v. *Barnard*,

40 Ind. 146; *English* v. *Woodman*, 40 Kan. 752; *Mc-Gregor* v. *Morrow*, 40 Kan. 730. * * * A final judgment in favor of the plaintiff is always an implied adjudication that all his allegations, both express and implied, are true. *Plummer* v. *Inhabitants of Waterville*, 32 Me. 566, 568."

In *Landon* v. *Comet*, 62 Mich. 80, it was held that, "where an objection was made to the right of the circuit judge to sit in the probate court, his assuming to act, ignoring the objection, was an adjudication of his right to do so." See, also, *Miller* v. *Smith*, 115 Mich. 427; *Allured* v. *Voller*, 112 Mich. 357; *Scotten* v. *City of Detroit*, 106 Mich. 564.

In the case before us, the jurisdiction rests upon a statute which confers upon the court the power of determining whether the State has a lien for taxes upon land, and enforcing payment by a decree of sale. It has undoubted jurisdiction in every case where there is an enforceable lien. In a sense, it has no jurisdiction in a case where there is no existing lien which the State has a right to enforce. But, manifestly, the only way of finding out whether the State has such a lien is to try the question, and if, as is contended here, the question may be raised collaterally in any court or proceeding, it follows that these proceedings (in *pro confesso* cases, at least) are decisive of nothing, for the same claim can be made as to any or all parcels of land covered by the decree. The statute prescribes what the petition shall contain. It does not require an allegation that none of the lands are held by the State upon tax bids. It alleges a lien, and prays enforcement, thus impliedly informing defendants that it is claimed that they are subject to such proceedings. The judge decides that they are so, when he includes them in the decree. We must presume that he has found the necessary facts. But there is a mistake of fact. The defendant has not chosen to bring the truth to his attention, or has inadvertently omitted it. But we must presume from the record that the necessary facts

have been found, and the record cannot be contradicted; otherwise, there would be a premium on not making a defense, for it would be safer. The supreme court of Louisiana said: "Absolute nullities in judicial proceedings are such as result from radical defects, omissions, and irregularities appearing on the face of the record, and are not dependent on matters *in pais,* to be established by evidence *aliunde.*" *Stackhouse* v. *Zuntz,* 36 La. Ann. 529, 533. The same point has been decided in many other States. *Hughes* v. *Cummings,* 7 Colo. 203 (a county court judgment); *Earle* v. *Earle,* 91 Ind. 27, 42; *Phillips* v. *Lewis,* 109 Ind. 62, 68; *Kingman* v. *Paulson,* 126 Ind. 507 (22 Am. St. Rep. 611); *Scott* v. *Crews,* 72 Mo. 261, 263; *Byram* v. *McDowell,* 15 Lea, 581, 585; *Stanley* v. *Sharp,* 1 Heisk. 417 (a county court judgment); *Beech* v. *Rich,* 13 Vt. 595; *Ex Parte Bergman,* 3 Wyo. 396; *Welborn* v. *People,* 76 Ill. 516; *Wright* v. *Wright,* 74 Wis. 439.

We think the judgment should stand affirmed.

MONTGOMERY, MOORE, and LONG, JJ., concurred. GRANT, C. J., did not sit.