AUDITOR GENERAL *v.* SHERMAN.

1. TAXATION—SALES TO STATE—CANCELLATION—NEW PROCEEDINGS—RIGHTS OF SUBSEQUENT PURCHASER.

A purchaser at a tax sale is chargeable with notice of prior outstanding State titles and liens, and is required by the statute to buy in such titles at the time of his purchase. Hence, where the auditor general, acting under section 139 of the tax law (Act No. 169, Pub. Acts 1899), canceled certain sales to the State, in consequence of which a purchaser at a sale for the taxes of a subsequent year was relieved from buying such titles, the State was not precluded, as against such purchaser, from taking new proceedings to enforce the taxes for which the sales so canceled were made; nor, in this view, could the purchaser be said to have been prejudiced by the fact that the auditor exceeded his authority in canceling such sales.

2. SAME—AUTHORITY OF AUDITOR GENERAL.

Section 139, aforesaid, did not enlarge the powers of the auditor general as to the grounds on which he might cancel sales.

3. SAME.

But he has authority to cancel a sale where the decree on which it is based is void upon its face.

Appeal from Gogebic; Haire, J. Submitted February 26, 1904. (Docket No. 193.) Decided March 23, 1904.

Petition by Perry F. Powers, auditor general, for the sale of lands delinquent for taxes: On objections filed by James E. Sherman. From a decree for respondent, petitioner appeals. Reversed.

*Charles A. Blair*, Attorney General, and *Samuel S. Cooper*, Prosecuting Attorney (*Charles W. McGill*, of counsel), for petitioner.

*M. J. Sherwood* (*B. J. Brown*, of counsel), for respondent.

HOOKER, J. This cause is before us on appeal from

a circuit court decree rendered upon the annual petition of the auditor general for the foreclosure of tax liens, filed in January, 1903.

In 1901 the State was the apparent owner of all of the premises included in this case as State tax lands, covering taxes for the years from 1891 to 1899, inclusive. Becoming satisfied that some of these years' proceedings could not be sustained, the auditor general canceled them for all years except for the taxes of 1891 to 1894, inclusive, and obtained a new decree, and sold the lands under such decree to the defendant, Sherman, at the delinquent sale held in May, 1902. No question can be raised over the validity of this sale, for, whether regular or not, the decree is final, under the case of *Peninsular Sav. Bank* v. *Ward*, 118 Mich. 93 (76 N. W. 161, 79 N. W. 911), not being open to collateral attack. When the petition was filed in such proceeding, it left the State holding title to the land as State tax lands for the years 1891, 1892, 1893, and 1894; and it is now claimed that the effect of this decree and sale was to cut off said title and any lien that the State might otherwise have had for the earlier years of 1891, 1892, 1893, and 1894.

After the petition was filed, but before sale, and possibly before decree, the auditor general canceled the title and decrees for the years 1891, 1892, 1893, and 1894. This occurred March 2, 1902, and the next year such taxes were included in the annual petition. The appellee, Sherman, holding title under the sale of 1902, appeared, and contested said proceedings, which resulted in a decree in his favor, and the State has appealed. He contends:

1. That, by selling the lands at delinquent sale in 1902, the State precluded itself from setting up any title or lien for taxes of earlier years.

2. That, if this is not so, the cancellation was void, and cannot support foreclosure proceedings, the lands still being State tax lands in such case.

3. That, in any event, he should be allowed to have his sale canceled, and the money paid for his title refunded.

The first contention rests upon the proposition that earlier tax titles and liens are cut off by the later, under section 72 of the tax law (1 Comp. Laws, § 3895), which provides that "such deeds shall convey an absolute title to the land sold, and be conclusive evidence of title in fee in the grantee, subject, however, to all taxes assessed and levied on such lands subsequent to the taxes for which the same was bid off." It has not been the general policy of the State to cut off its own State tax titles by delinquent or other sales. Thus it always required the purchase of anterior State bids with any particular State bid, where lands were bought from the auditor general. See State Tax Law, § 84 (1 Comp. Laws, § 3907). And the same is true at delinquent sales. See State Tax Law, § 80 (1 Comp. Laws, § 3903). Had not the tax decrees for 1891, 1892, 1893, and 1894 been canceled before sale, the respondent would not have been allowed to make his purchase in 1902 without at the same time purchasing the title for these years 1891, 1892, 1893, and 1894. In relieving him from this requirement, the auditor general proceeded under section 139 of the tax law (Pub. Acts 1899, Act No. 169), which provides:

"The auditor general may cause an examination to be made of the proceedings under which any lands bid to the State, and which have not been deeded by the auditor general, were sold for delinquent taxes and bid to the State under the provisions of any general tax law, and if he shall find that such sales, or the decrees under and by virtue of which such sales were made, were in contravention of any provision of the laws in force at the time such decrees were entered or sales made, he may cancel such sales, and proceed at any time to enforce the collection of such taxes under and in accordance with the provisions of this act, as in the case of lands returned or sold thereunder.

"This act is ordered to take immediate effect.

"Approved June 23, 1899."

This act attempts to give the auditor general authority to enforce the lien, which, by reason of defective fore-

closure proceedings, is not marketable. The purchaser of land is always chargeable with notice of outstanding taxes and tax liens of the State, and this section was not designed to change this rule, or to relieve the purchaser therefrom. Section 72 should be construed in connection with this section, and so construed as not to permit a purchaser to escape this outstanding lien, which is being enforced under section 139, by a strict construction of section 72. As we said in *Schulte* v. *Auditor General,* 131 Mich. 676 (92 N. W. 417), "this land is in a class by itself," and is governed by sections 138 and 139. It is true that the *Schulte Case* arose between the State and the original owner of the land, who was under an obligation to pay these taxes; but this was not the case in *Auditor General* v. *Newman,* 135 Mich. 288 (97 N. W. 703), which fairly covers this question. The purchaser at delinquent sales is as clearly chargeable with outstanding State titles as is the original owner, and the law does not permit him to buy without providing for them.

This disposes of the main question in the case, but the appellee urges his right to resist the decree upon the ground that the auditor general had no authority to cancel these proceedings, and that they are still State tax lands, which cannot lawfully be included in the petition and decree. It is said also that section 139 does not apply when the land has been sold. We may dispose of the last objection by saying that these lands had not been deeded or sold by the State on March 2, 1902, when this cancellation was made.

Unless section 139 enlarged the powers of the auditor general as to grounds upon which he may cancel sales (and we do not think it had that effect), we must conclude that two of the items would not have been lawfully canceled as against the protest of the State. The other two were lawfully canceled, for the decrees were apparently void upon their faces. See *Peninsular Sav. Bank* v. *Ward,* 118 Mich. 94 (76 N. W. 161, 79 N. W. 911), for the rule as to the former; *Miller* v. *Brown,* 122 Mich.

147 (80 N. W. 999), *McGinley* v. *Mining Co.*, 121 Mich. 88 (79 N. W. 928), and *Peninsular Sav. Bank* v. *Ward*, *supra*, as to the latter.   If the cancellation is void, the appellee has succeeded in obtaining a deed when not entitled to it, for it was the duty of the treasurer to require payment for all State tax land titles at the time of purchase in 1902, and it would not be unreasonable to hold that even tax liens outstanding are within the spirit of that requirement.   The State is not here complaining, and we do not see that the appellee is injured by the cancellation of the State's title and the institution of new proceedings to foreclose the original lien.

The third point is substantially covered by what has been said.   With notice of the requirements of the law, he must have known that sooner or later, in one form or another, he must pay the lien of the State.

The decree of the circuit court is reversed, and a new decree will be entered in accordance with the prayer of the petition, with costs of both courts.

MOORE, C. J., CARPENTER and MONTGOMERY, JJ., concurred.   GRANT, J., took no part in the decision.